*400
 
 Turner, J.
 

 Tlie record in this case present’s two questions:
 

 (1) Was appellee’s decedent, at the time of his death, an employee of the Cox Transportation Company?
 

 (2) Was the injury, which caused the death of appellee’s decedent, received in-the course of and did it arise out of the injured employee’s employment?
 

 The evidence disclosed that while Martin Firestone was taking a trailer to be repaired, he fell and received an injury causing his death. The trailer had been leased by Martin Firestone to the Cox Transportation Company under an agreement whereby Firestone released all control of the trailer to the Cox Transportation Company. The agreement further provided that Firestone was to be deemed the employee of Cox Transportation Company which expressly assumed all duties and liabilities of an employer and also contained the provision that: “It is further understood and agreed that the first party [Cox Transportation Company] expressly assumes all legal liabilities which may arise as though in fact said equipment was owned by said first party.”
 

 Notwithstanding appellant’s claim that Martin Firestone was an independent contractor, it is admitted in appellant’s brief: “If Mr. Martin Firestone had been engaged in the driving of the piece of equipment on which he ,was hurt in the transporting of freight for said 'company, we believe under the terms of the oral and written agreements that he would be termed an employee.”
 

 This limits appellant’s claim to be that Martin Firestone was not an employee while taking the trailer to be repaired.
 

 The evidence further disclosed that the Cox Transportation Company is an interstate common carrier by motor vehicle and, therefore, subject to Part II of
 
 *401
 
 the Interstate Commerce Act (Title 49, Chapter 8, Section 301
 
 et seq.,
 
 U. S. Code). That act confers upon the Interstate Commerce Commission rule-making power to regulate common carriers by motor vehicle by the establishment of reasonable requirements with respect to service to the public, the maximum hours of service of employees and safety of operation and equipment.
 

 The Bureau of Motor Carriers within the Interstate Commerce Commission made the following administrative ruling on August 19, 1936 (Ruling No. 4):
 

 “Question:
 
 Under what circumstances may a carrier add to its equipment by leasing a vehicle and obtaining the service of its owner-driver?
 

 “ Answer:
 
 The lease or other arrangement by which the equipment of an authorized operator'is augmented, must be of such a character that the possession and control of the vehicle is, for the period of the lease, entirely vested in the authorized operator in such way as to be good against all the world, including the lessor ; that the operation thereof must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employees of the authorized operator, that is to say, who stand in the relation of servant to him as master.” (See Administrative Rulings, Federal Carriers Service CCH,-page 6051, paragraph 6004, and Annotation to Section 208 [a], page 229.01, Federal Carriers Service CCH.)
 

 This court will take judicial notice of such administrative order.
 
 Boone
 
 v.
 
 State,
 
 109 Ohio St., 1, 141 N. E., 841;
 
 State Board of Pharmacy
 
 v.
 
 Gafford,
 
 122 Ohio St., 580, 173 N. E., 192;
 
 Black
 
 v.
 
 City of Berea,
 
 137 Ohio St., 611, 619, 32 N. E. (2d), 1, 132 A. L. R., 1391; 30 Ohio Jurisprudence, 202, Section 8.
 

 The record discloses that on February 1, 1940, Mar
 
 *402
 
 tin Firestone entered into three lease agreements with the Cox Transportation Company. With the exception of the description of the equipment which consisted of a tractor, a semi-trailer and a four-wheel trailer (one lease for each piece of equipment), these lease agreements are identical. The provisions of the leases material here are as follows:
 

 “Lease Agreement.
 

 “Lease between Cox Transportation Co. with offices and principal place of business at Youngstown, Ohio, party of the first part, and Martin Firestone, party of the second part. * * *
 

 “1. First party, hereby engages and leases from the second party for use in its service as...... the within described equipment * * * to be used by first party in transporting freight and merchandise.
 

 “2. First party agrees to pay second party seventy
 
 °/o
 
 (70) per cent of the gross charges on all freight transported by the second party for the use of said equipment.
 

 “3. In case second party’s services shall be engaged as driver of the said equipment, compensation therefor shall be paid by the first party at a minimum rate of included under No. 2. Such rate when once established shall hot be changed without five days written notice. In such cases the party of the second part shall be deemed an employee of said first party and shall be entitled to all rights and privileges as an employee. First party hereby expressly assumes all duties and liabilities of an employer. # # *
 

 “5. It is specifically agreed and understood between the parties hereto that second party, in leasing and furnishing the equipment described in this contract for operation by the first party, shall not in any way control the use or operation of such equipment, and that the first party shall have complete control of such
 
 *403
 
 equipment. It is further understood and agreed that the first party expressly assumes all legal liabilities which may arise as though in fact said'equipment was owned by the said first party. * * *”
 

 While the general manager of the Cox Transportation Company testified that there was no other agreement besides those above referred to, it is claimed' on behalf of appellant that in addition to the written lease agreements it was orally agreed between the parties that:
 

 “(a) All gas and oil for operation of said equipment should be furnished by claimant’s decedent;
 

 “(b) All leased equipment should be kept in repair by claimant’s decedent at his cost.”
 

 The record discloses that on the day of the injury Martin Firestone’s son was using the tractor and semitrailer to haul freight for the Cox Transportation Company in interstate commerce. The four-wheel trailer being in need of repairs, Martin Firestone started to take it to a garage. On the way he fell, receiving the injury from which he died.
 

 Edward Firestone (Martin’s son) testified that he and his father drove the equipment “about half of the time”; that Harry Anderson, dispatcher for the Cox Transportation Company, had- ordered the repair of the four-wheel trailer on account of the fact that unless repaired it might lose part of the load. .Harry Anderson did not testify in the case but it was stipulated that if he were present he would testify,
 
 inter alia:
 

 “* * * Our company did not have anything to do with the repair and upkeep of his equipment and did not maintain service in this respect. However our company did have the right to tell him whether or not his equipment was unsafe and needed repair. When these occasions arose, it was up to him to have it repaired where he wanted to. * * * About a week before
 
 *404
 
 August 9, 1940, I was after him because he was only pulling with tractor and semi-trailer. His four-wheel trailer was being repaired by himself. I knew that he had it in Brewer’s yard, 3319 Regent Road. On about August 2, 1940, he got a haul going to Buffalo and he was using the tractor, the semi- and the four-wheel trailer, and after being loaded he could not take both trailers into Buffalo because the Ne-fo York state law allows only two units and he drove over to Brewer’s yard and left the four-wheel trailer at Brewer’s garage where it was unloaded and then the four-wheel trailer was left in Brewer’s yard and his son Edward took the tractor and semitrailer to final destination. Martin remained behind. When Martin Firestone was left behind, we had nothing further to do with him outside of his equipment that was making a trip to Buffalo. What he did or intended to do with the trailer was no concern of ours. However, I did know that he intended to work on it, that the flooring was in very bad shape. I knew that he intended to fix it, but whether he was going to do it or hire someone to do it, was not our responsibility, and we exercised no authority over him where he should have it done. All we required according to the contract is that the equipment was in good safe condition. * * * Martin Firestone did not punch a clock, had no regular hours. He used to call every day and ask me where his son was and if his equipment was kept busy. I did not pay his son, all checks were made out to Martin Firestone. What he paid his son or whether he paid him, I do not know.”
 

 Any question of credibility rested, of course, with the trial court.
 

 Appellant argues that the
 
 claimed
 
 oral contract to keep the equipment in repair is persuasive that: (a) Martin Firestone was an independent contractor, and /or, (b) if he was an employee at any time, his em
 
 *405
 
 ployment liad ceased and he was on his own business at the time of the accident. Whether there was an additional oral contract was a question of fact for the trial court. The record discloses no finding sustaining the claim of an additional contract. But assuming that there was an additional contract or arrangement whereby Martin Firestone was to keep his equipment in repair, such contract would not be inconsistent with the written contract under which the Cox Transportation Company retained “complete control of such equipment,” wherein it was specifically agreed and understood that Martin Firestone “shall not in any way control the use or operation of said equipment,” and that “It is further understood and agreed that the first party [Cox Transportation Company] expressly assumes all legal liabilities which may arise as though in fact said equipment was owned by the said first party.”
 

 Furthermore, the evidence shows that only 18 per cent of Martin Firestone’s compensation was set aside as wages. The general manager of the Cox Transportation Company testified: “Q. You would turn over to Mr. Martin Firestone his 70 per cent of whatever he hauled, would you not? A. Yes, less any deductions for any purchases made for gasoline or
 
 repairs
 
 or anything like that. (Italics ours.)
 

 In the case of
 
 Gillum
 
 v.
 
 Industrial Commission,
 
 141 Ohio St., 373, 48 N. E. (2d), 234, it was held:
 

 “Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.”
 

 
 *406
 
 There is nothing in the record tending to show that the lease agreements were in any wise fictitious or express other than the real arrangement. As pointed out above', we may take notice of the administrative order of the Interstate Commerce Commission requiring that the lease or other arrangement by which the equipment of an authorized operator is augmented must be of such character that the possession and control of the vehicle is entirely vested-in the authorized operator in such a way as to be good against all the world including the lessor and that the operation of such equipment must be under the supervision and control of the carrier and operated by a person who stands in the relation of servant to the transportation company as master. (See Administrative Ruling No. 4,
 
 supra.)
 
 The record offers no justification for an inference that the parties to the lease agreements were seeking to evade compliance with such administrative ruling. On the other hand, the record shows compliance with such ruling.
 

 The evidence in the instant case points clearly to the conclusion that Martin Firestone was an employee of the Cox Transportation Company and was in the course of his employment at the time of the injury which arose out of such employment.
 

 Therefore, the judgment of the Court of Appeals should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Zimmerman, Bell and Williams, JJ., concur.
 

 Weygandt, C. J., Matthias and Hart, JJ., dissent.