Hart, J.
 

 The sole question before this court, as in the Court of Appeals, is whether the decedent Carter was at the time of his death an employee of the transfer company within the meaning and coverage of the Ohio Workmen’s Compensation Act.
 

 Whether an individual performing service for another does so as an independent contractor or as an employee is ordinarily a question of fact, the deciding factor being in whom is vested the right of control or superintendence as to the details of the work. It is not the fact of actual interference in control on the
 
 *437
 
 part, of the one for whom the work is performed, but the right to interefere therewith which distinguishes the relationship of an independent contractor from that of a servant or agent. If the right to control the manner or means of performing the work is in the person for whom the work is performed, the relationship is that of employer and employee or master and servant ; but if the control of the manner or means of performing the work is delegated to the person performing the work, the relationship is that of independent contractor.
 
 Gillum
 
 v.
 
 Industrial Commission,
 
 141 Ohio St., 373, 48 N. E. (2d), 234;
 
 Bobik
 
 v.
 
 Industrial Commission,
 
 146 Ohio St., 187, 64 N. E. (2d), 829;
 
 Rochester Dairy Co.
 
 v.
 
 Christgau, Dir.,
 
 217 Minn., 460, 14 N. W. (2d), 780;
 
 War Emergency Co-op Assn.
 
 v.
 
 Widenhouse,
 
 169 F. (2d), 403.
 

 The relationship between the transfer company and Carter as created by the contract itself and as carried out in performance under the circumstances herein-before related at the time of Carter’s death clearly was a relationship of independent contractor and not one of employer and employee.
 
 Gillum
 
 v.
 
 Industrial Commission,
 
 supra;
 
 Wilds
 
 v.
 
 Morehouse,
 
 152 Neb., 749, 42 N. W. (2d), 1649.
 

 The defendant claims that, since Carter was not an employee but an independent contractor, he was not within the coverage provided by Section 1465-61, General Code, a part of the Workmen’s Compensation Act. This court likewise held as to an intrastate shipment in
 
 Gillum
 
 v.
 
 Industrial Commission, supra,
 
 and the plaintiffs do not seriously contend otherwise if the relationship be that of independent contractor. See, also,
 
 Bobik v. Industrial Commission, supra; Coviello
 
 v.
 
 Industrial Commission,
 
 129 Ohio St., 589, 196 N. E., 661;
 
 Industrial Commission
 
 v.
 
 Laird,
 
 126 Ohio St., 617, 186 N. E., 718;
 
 Industrial Commission
 
 v.
 
 Bateman,
 
 126
 
 *438
 
 Ohio St., 279, 185 N. E., 50;
 
 Wilds
 
 v.
 
 Morehouse,
 
 supra; 21 Ohio Jurispru deuce, 636, Section 15.
 

 But the plaintiffs claim that since the transfer company was authorized to engage in interstate transportation by motor vehicle and was so engaged under its contract with Carter at the time of his death, a fact which is conceded, Carter was necessarily an employee of the company by force of Administrative Rule No. 4 of the Bureau of Motor Carriers of the Interstate Commerce Commission, as authorized by Part II of the Interstate Commerce Act, Title 49, Section 301
 
 el seq.,
 
 U. S. Code.
 

 Such Administrative Rule No. 4 of August 19, 1936, provided as follows:
 

 “Question:
 
 Under what circumstances may a carrier add to its equipment by leasing a vehicle and obtaining the service of its owner-driverf
 

 “Answer:
 
 The lease or other arrangement by which the equipment of an authorised operator is augmented, must be of such a character that the possession and control of the vehicle is, for the period of the lease, entirely vested in the authorised operator in such loay as to be good against all the world, including the lessor; that the operation thereof must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employee's of the authorised operator, that is to say, who stand in the relation of servant to him. as master.
 
 ” (Italics supplied.)
 

 The rule, as above quoted, continued in force until August 9, 1939, when the rule was rephrased and as such remains in force as follows:
 

 “The lease or othe.r arrangement under which the carrier utilizes in its operations a vehicle which it does not own, whether or not including the services of an owner-driver or his representative, must be of
 
 *439
 
 such, a character that the carrier will have the
 
 right to direct and control
 
 the operation of the vehicle at all times and be fully responsible therefor in all respects under all applicable provisions of law governing the duties and obligations of the carrier to the shipper and to the public generally.”
 

 The purpose of the adoption of the last above-quoted rule with reference to the regulation of interstate common carriers by motor vehicle was to make the interstate carrier responsible to the public for wrongs done or injuries inflicted by the carrier or those acting for it throughout the entire course of any transportation project undertaken by the carrier. This purpose has been recognized by the interpretation which the courts have given to the rule in question. In fact this purpose is especially provided for in the act itself. Part II of the Interstate Commerce Act, Title 119, Section 315, U. S. Code, provides:
 

 “No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amount as the commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carriel* for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others.
 
 *
 
 * *”
 

 A similar construction was given by this court to the Motor Transportation Companies Act and the
 
 *440
 
 Private Motor Carriers Act of this state (Sections 614-84 to 614-128, inclusive, General Code), as related to interstate common carriers by motor vehicle, in
 
 Duncan
 
 v.
 
 Evans,
 
 134 Ohio St., 486, 17 N. E. (2d), 913. In that case Evans had a certificate of public convenience and necessity from the Public Utilities Commission of Ohio to engage in a motor transportation business restricted to interstate commerce. He attempted to delegate the right to carry goods to George Moore who did not have a certificate. While one of Moore's agents was driving a truck carrying the goods consigned to him by Evans, the truck collided with an automobile which in turn collided with the automobile which Duncan was driving, injuring him. This court’, in its
 
 per curiam
 
 opinion, said:
 

 “Apparently the Legislature intended to protect the public against loss from negligence on the part of anyone using the highway in the business of transportation by'motor truck. Therefore the trial courts were correct in charging the juries that these defendants could not escape liability by delegating their duties to independent contractors.” See Restatement of the Law of Torts, Section 428;
 
 Hodges
 
 v.
 
 Johnson,
 
 52 F. Supp., 488;
 
 Venuto
 
 v.
 
 Robinson,
 
 118 F. (2d), 679. See, also,
 
 Steffens
 
 v.
 
 Continental Freight Forwarders Co., Inc.,
 
 66 Ohio App., 534, 35 N. E. (2d), 734.
 

 Generally speaking, the law of the place of a tortious act governs liability therefor. 11 American Jurisprudence, 490, Section 182
 
 et
 
 seq.; Restatement of the Law of Conflict of Laws, Sections 470 and 472. But clearly under Administrative Rule No. 4 the transfer company, as well as Carter, would have been liable to any third person injured by Carter’s negligence in connection with the operation of his truck in case of a collision in the state of New York.
 
 War Emergency Co-op Assn.
 
 v.
 
 Widenhouse, supra.
 

 
 *441
 
 It remains to be determined whether the Interstate Commerce Act had the effect of making Carter such an employee of the transfer company at the time of his death as would place him within the coverage of the Workmen’s Compensation Act, notwithstanding the relationship in other respects was that of independent contractor.
 

 On two occasions this court, in construing contracts for interstate transportation under the circumstances of the transportation service incident thereto, held that the relationship of an interstate common carrier by motor vehicle and the person actually carrying an interstate shipment for it was that of employer and employee, bringing the employee within the coverage of the Workmen’s Compensation Act.
 

 In
 
 Firestone
 
 v.
 
 Industrial Commission,
 
 144 Ohio St., 398, 59 N. E. (2d), 147, the Cox Transportation Company of Youngstown was an interstate common carrier by motor vehicle and therefore subject to Part II of the Interstate Commerce Act (Title 49, Section 301
 
 et seq.,
 
 U. S. Code). Firestone entered into a contract of lease with the Cox company whereby he released all control of his truck and trailer to the company; Avhereby he was to be deemed the employee of the company to operate the trailer; and whereby the company expressly assumed all duties and liabilities of employer and all liability which might arise as though in fact the trailer was owned by the company. Firestone was to be paid for his services 70 per cent of the gross charges on all freight transported by him with his tractor-trailer and for all gasoline and oil for operation of the equipment. Repairs to be made thereon were to be paid by Firestone. Firestone had no regular hours. Finding that the semitrailer was out of order, Firestone’s son operated the tractor on a 1 rip to Buffalo while Firestone undertook to take the
 
 *442
 
 trailer to a repair shop selected by him. In doing so he fell and received injuries causing his death. This court held that it must take judicial notice of the Interstate Commerce Commission regulations and Judge Turner, in paraphrasing an order of the commission, said that the possession and control of the motor vehicle “is entirely vested in the authorized operator in such a way as to be good against all the world including the lessor and that the operation of such equipment must be under the supervision and control of the carrier and operated by a person who stands in the relation of servant to the transportation company as master.” The court affirmed the judgment of the Court of Appeals which had affirmed the judgment of the Common Pleas Court holding that Firestone’s widow, as his dependent, was entitled to participate in the state insurance fund.
 

 In
 
 Bobik
 
 v.
 
 Industrial Commission,
 
 146 Ohio St., 187, 64 N. E. (2d), 829, the Aztec Lines, Inc., of Cleveland operated as an interstate common carrier between Chicago and Cleveland. It entered into an “equipment agreement” with one Muni, the owner of a tractor-trailer by which the latter furnished his equipment for use in the carrier service of the former. The agreement provided that the carrier should pay Muni for furnishing equipment, facilities - and operators thereof $40 per trip plus twenty cents for each 100 pounds over 20,000 pounds. Muni paid for the gasoline and oil for his truck and was obligated to keep his truck in repair. The truck carried the insignia, “Aztec Unes, Incorporated,” and was operated under a permit granted to Aztec Lines, Inc., as an interstate carrier. Bobik, the driver of Muni’s truck, was paid by Muni in cash by way of salary $18 per trip plus bonus for overweight. Bobik, while driving the equipment from Chicago to Cleveland, sustained injuries
 
 *443
 
 for which he filed a claim for compensation as an employee of the Aztec Lines, Inc. The Industrial Commission denied the claim. On appeal to the Common Pleas Court, a judgment was rendered that plaintiff was entitled to participate in the state fund.
 

 On appeal to the Court of Appeals that court stated that the sole question raised in the appeal was whether Bobik at the time of his injury was an employee of Aztec Lines, Inc., or whether Muni was an independent contractor and Bobik his employee. The Court of Appeals, in affirming the judgment of the Common Pleas Court, held as a decisive factor that, since the agreement between Aztec Lines, Inc., and Muni provided that it was made “subject to the duty to the party of the first part (Aztec Lines, Inc.) to conform to and comply with all present and future proper and lawful orders, rules and regulations of the Interstate Commerce Commission,” the rules of the commission made Bobik an employee of the Aztec Lines, Inc.
 

 This court affirmed the judgment of the Court of-Appeals (see
 
 Bobik
 
 v.
 
 Industrial Commission, supra),
 
 but based its decision on the ground that the record sustained the conclusion that Bobik took his instructions and directions from Aztec Lines, Inc., and was the employee of Aztec Junes, Inc., and that “Muni’s responsibility was to furnish the equipment and the driver.” This court, in reaching its conclusion, did not discuss or consider as applicable the rules of the bureau of the Interstate Commerce Commission under which Aztec Lines, Inc., operated, but held that “if an employer expressly or impliedly assents to an arrangement whereby a person is procured by an employee to act as his substitute or assistant, such substitute or assistant occupies the position of an employee to whom the employer owes the same duties as to his other employees. ’ ’
 

 
 *444
 
 A leading case on this subject holding the view urged by plaintiffs is that of
 
 Brown, Admx.,
 
 v.
 
 L. H. Bottoms Truck Lines, Inc.,
 
 227 N. C., 299, 42 S. E. (2d), 71. In that case Brown entered into a contract with the defendants whereby he contracted to use and operate his own truck in hauling for defendants, as licensed motor vehicle carriers, a load of freight from High Point, North Carolina, to Norfolk, Yirginia. The contract between the parties in the nature of a “lease” agreement provided for the transportation as above indicated; that upon arrival of the vehicle at the destination terminal the shipper would upon discharge of the load deliver the truck to Brown; that Brown would pay all maintenance and operating expenses of the truck while in the use of the shipper; that the shipper would not be liable for any damage to the truck; that Brown would indemnify the shipper against any claim arising from the operation of the vehicle and for the damages to any shipment being transported in the vehicle; that Brown would be paid $40 per load for the use of the motor vehicle in the service; and that the shipper would assign and affix to the vehicle for the duration of the lease its Interstate Commerce Commission identification plates which would be removed at the destination terminal.
 

 Brown, in driving the truck on a trip for the shipper to Norfolk, was killed, and his dependents sought workmen’s compensation from the North Carolina state insurance fund on the ground that Brown was at the time of his death an employee of the shipper. The contention was made by defendants that Brown was an independent contractor and not within compensation coverage. The claim, however, was allowed. Its allowance was affirmed by the "intermediate appellate court and in turn affirmed by the Supreme Court of
 
 *445
 
 North Carolina. That court held that a truck leased by a licensed interstate carrier could be lawfully operated only by those standing in relationship of employees of the licensed carrier; that the operation of the truck was in law under supervision and control of the licensed carrier, that an owner, driving a truck leased to a licensed interstate motor carrier which the owner himself had no license to operate, was an “employee” of the lessee within the meaning of the Workmen’s Compensation Act, notwithstanding a lease provisioti that the owner would indemnify the lessee against damage arising from the operation of the truck; and that a licensed interstate motor carrier, by placing its own license plates on a leased truck in order to authorize its use in transportation of goods in interstate commerce, assumed such control in the operation of the leased truck as to defeat its plea of non-liability under the Workmen’s Compensation Act for injury to the driver, although otherwise the driver was an independent contractor and not lessee’s employee.
 

 On the other hand, this court, in
 
 Commercial Motor Freight, Inc., v. Ebright, Treas.,
 
 143 Ohio St., 127, 54 N. E. (2d), 297, 151 A. L. R., 1321, had before it the question of the validity of assessments made by the Bureau of Unemployment Compensation against a common carrier by motor vehicle representing premiums alleged by the bureau to be owing on account of claimed wages paid by the carrier to truckers in its employ. Besides operating certain trucks of its own, the carrier employed certain persons owning-tractors to haul its trailers in the transportation of freight between the city of Columbus, Ohio, and other cities within and without the state. In general, the contracts of employment and the modes of operation in transportation were similar to those under consideration in the instant case.
 

 
 *446
 
 This court held that a motor truck operator who, under contract, furnishes his own motor truck, including its fueling and maintenance, to a freight distributing corporation to haul with such motor truck the trailers of such corporation from point to point as directed, and for which he is compensated according to the service rendered, determined either by the mileage covered or by the tonnage hauled, is an independent contractor and, as such, is not within the coverage of the Unemployment Compensation Act.
 

 In the A. L..R. annotation to that case, covering the subject, “One who uses his own truck as an independent contractor or an employee of concern for which he transports goods, within social security or unemployment compensation act,’’ it is stated:
 

 “The relationship existing between persons using their
 
 own
 
 truck to transport goods for another has been held or recognized in the later cases, under the circumstances present, to be that of employer and independent contractor, within the meaning of the Social Security Act.
 
 Midwest Haulers, Inc.,
 
 v.
 
 Brady
 
 (1942; C. C. A. 6), 128 F. (2d), 496;
 
 Mutual Trucking Co.
 
 v.
 
 United States
 
 (1943; D. C.), 51 F. Supp., 114 (affirmed in [1944; C. C. A. 6] 141 F. [2d], 655);
 
 Orange State Oil Co.
 
 v.
 
 Fahs
 
 (1942; D. C.), 52 F. Supp., 509 (affirmed without opinion in [1943; C. C. A. 5] 138 F. [2d], 743).’’
 

 Recent cases decided by the federal courts, having under consideration the same or allied questions, have held generally that within workmen’s compensation acts, unemployment compensation acts and the Social Security Act one who owns his own truck and by contract candes goods for another under circumstances similar to the instant case is an independent contractor and not an employee of a trucking company for which he transports goods.
 

 
 *447
 
 One of the leading cases covering certain phases- of the question under consideration is
 
 United States
 
 v.
 
 Mutual Trucking Co.,
 
 141 F. (2d), 655, decided by the Circuit Court of Appeals of the Sixth Circuit, involving an action of a motor trucking company against the United States to recover taxes alleged to have been erroneously and illegally collected from the plaintiff under the Social Security Act, the federal Unemployment Tax Act and the federal Insurance Contributions Act. The defendant appealed from a judgment for the plaintiff entered by the United States District Court of Ohio, Western Division. Each of the statutes involved imposes a liability for taxes upon “every employer * * * with respect to having individuals in bis employ. ’ ’ The facts in that case were as follows:
 

 The appellee, organized under the laws of Illinois, had its principal place of business in Toledo, Ohio, ir, contracted with certain owner-operators of carrying equipment to do hauling for it in interstate commerce under identical written contracts which contained the following clause:
 

 “ It is to be clearly understood and agreed, and it is the intention of the parties hereto, that second party [owner-operator] is a contractor only and is not the agent, employee or representative of first party [appellee] for any purpose whatever.”
 

 The contract also provided that the owner-operator should assume full responsibility for payment of all state and federal taxes for unemployment insurance, old age pensions, or other social security laws as to all persons engaged in the performance of the contract.
 

 The contract provided also :
 

 “First party hereby grants permission to second party * * * as and when necessary and required, to use its certificates or permits for such hauling of freight as he may do for first party, but for no other
 
 *448
 
 purpose whatever. All license tags, drivers’ licenses, union fees or dues, fees assessed by municipal corporations * * * shall be paid and borne by said second party, and first party shall have no responsibility whatever to second party * * * for any fines, costs or expenses incurred by second party or any of his employees by reason of his or their failure to have proper markings on equipment, or by reason of any violation by second party or any of his employees, of any rule or order of the Bureau of Motor Carriers of the Interstate Commerce Commission, or any public utility commission, or other authority of any state * * *. Second party also agrees that he will * * * comply with all laws, rules * * * of the Bureau of Motor Carriers of the Interstate Commerce Commission * * *.”
 

 The owner-operator was paid a flat rate for each trip. The payment of the driver, the cost of maintenance and repairs and the cost of operation were borne by the owner-operator. No penalty was exacted by the appellee if the shipment was delayed, but the appellee required the drivers to file a “daily log’'’ of the trip.
 

 The court in that case held that where a trucking company undertook to move loaded trailers from terminal to terminal of a carloading company and contracted to have the work done by owners of tractors and trailers, some of whom operated through employees, such owners were “independent contractors” and mother they nor their employees were “employees” of the trucking company so as to render such company liable for social security or federal insurance contributions.
 

 Judge Allen, formerly a member of this court, speaking for the court in that case, said:
 

 “The Ohio decisions hold this relationship to be
 
 *449
 
 that of independent contract.
 
 Coviello
 
 v.
 
 Industrial Commission,
 
 129 Ohio St., 589, 196 N. E., 661;
 
 Industrial Commission
 
 v.
 
 McAdow,
 
 126 Ohio St., 198, 184 N. E., 759.
 

 “* *
 
 *
 
 The Interstate Commerce Commission recognizes operation of trucking companies through independent contract, and in its auditing department reports this class of business under the heading ‘Purchased Transportation.’ * * * The use of the plates and the form of the application therefor is clearly explained by the necessity for complying with the regulations of the Interstate Commerce Commission.
 

 ( C
 
 # * *
 

 “Congress might have provided that such a relationship should be considered an employment, but it has not done so. In fact the Senate rejected a House amendment which would have extended the coverage in the statute beyond the employment relationship. The House receded and the act was passed with coverage limited to employees. * * *
 

 C t
 
 * *
 

 “These considerations require affirmance of the judgment. We have recently made a similar decision in
 
 Glenn, Collector,
 
 v.
 
 Beard,
 
 6 Cir., 141 F. (2d), 376. Our conclusion is in accord with the great weight of authority both in federal and state decisions upon this question.”
 

 A later federal court case is that of
 
 Harrison v. Greyvan Lines, Inc.
 
 (C. C. A., 7), 156 F. (2d), 412. That was an action by Greyvan Lines, Inc., against Harrison individually and as collector to recover certain amounts alleged to have been wrongfully assessed and collected for social security taxes. From a judgment for the plaintiff in the district court the defendant appealed. The taxpayer contended that, its truck-
 
 *450
 
 men operated as independent contractors and that their helpers were their own employees, whereas the collector contended that the truckmen and their helpers alike had an employee relationship to the taxpayer. The court overruled the latter’s contention.
 

 The judgment in that case was affirmed by a divided court in favor of the taxpayer by the Supreme Court of the United States, opinion reported in 331 U. S., 704, 722, 91L. Ed., 1757,1764. In the opinion delivered by Mr. Justice Reed, the court narrated the terms of the trucking contracts and said:
 

 “The taxpayer must be an ‘employer’ and the man who receives wages an ‘employee.’ There is no indication that Congress intended to change normal business relationships through which one business organization obtained the services of another to perform a portion of production or distribution. Few businesses are so completely integrated that they can themselves produce the raw material, manufacture and distribute the finished product to the ultimate consumer without assistance from independent contractors. The Social Security Act was drawn with this industrial situation as a part of the surroundings in which it was to be enforced. Where a part of an industrial process is in the hands of independent contractors, they are the ones who should pay the social security taxes.
 

 £ £ * ** #
 

 “These unloaders and truckers and their assistants are from one standpoint an integral part of the businesses of retailing coal or transporting freight. Their energy, care and judgment may conserve their equipment or increase their earnings but Greyvan and Silk are the directors of their businesses. On the other hand, the truckmen hire their own assistants, own their trucks, pay their own expenses, with minor ex
 
 *451
 
 ceptions, and depend upon their own initiative, judgment and energy for a large part of their success.
 

 (C
 
 # * *
 

 “ There are cases, too, where driver-owners of trucks or wagons have been held employees in accident suits at tort or under workmen’s compensation laws. But we agree with the decision below * * * that where the arrangements leave the driver-owners so much responsibility for investment and management as here, they must be held to be independent contractors. These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer. The distinction, though important, is not controlling. It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors.”
 

 For cases involving unemployment compensation claims see
 
 Ozark Minerals Co.
 
 v.
 
 Murphy, Dir.,
 
 384 Ill., 94, 51 N. E. (2d), 197;
 
 New York Life Ins. Co.
 
 v.
 
 Murphy, Dir.,
 
 388 Ill., 316, 58 N. E. (2d), 182;
 
 Arrow Petroleum Co.
 
 v.
 
 Murphy, Dir.,
 
 389 Ill., 43, 58 N. E. (2d), 532;
 
 State Employment Security Board
 
 v.
 
 Motor Express, Inc.,
 
 117 Ind. App., 113, 69 N. E. (2d), 603;
 
 Rochester Dairy Co.
 
 v.
 
 Christgau, Dir.,
 
 217 Minn., 460, 14 N. W. (2d), 780;
 
 McCain, Commr. of Labor,
 
 v.
 
 Crossett Lumber Co.,
 
 206 Ark., 51, 174 S. W. (2d), 114. For a case involving a workmen’s compensation claim see
 
 Wilds
 
 v.
 
 Morehouse, supra.
 
 For a case involving social security claims see
 
 Greyvan Lines. Inc.,
 
 v.
 
 Harrison, supra.
 

 In view of the state of the law as reflected by the holdings of more recent cases, some of which are referred to and reviewed herein, this court is of the
 
 *452
 
 opinion that the judgment in this case should be reversed and the order of the Industrial Commission affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stewart, Taft and Matthias, JJ., concur.
 

 Zimmerman, J., dissents.
 

 Middleton, J., not participating.