[Cite as *Giant Eagle, Inc. v. Horizon Natl. Contract Servs., L.L.C.*, 2012-Ohio-1841.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96610**

## GIANT EAGLE, INC., ET AL.

PLAINTIFFS-APPELLANTS

vs.

## HORIZON NATIONAL CONTRACT SERVICES, LLC

DEFENDANT-APPELLEE

**JUDGMENT:**
**REVERSED AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-702325

**BEFORE:** Keough, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 26, 2012

**ATTORNEYS FOR APPELLANTS**

**For Giant Eagle, Inc.**

Michael J. Roche
Rademaker, Matty, McClelland & Greve
55 Public Square
Suite 1775
Cleveland, OH 44113

**For Linda Hach**

Lawrence W. Corman
55 Public Square
Suite 1717
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

Thomas J. Cabral
Darlene White
Colleen A. Mountcastle
Gallagher Sharp
6th Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Plaintiffs-appellants, Giant Eagle, Inc. and Linda Hach, appeal from the trial court's judgment granting the motion for summary judgment of defendant-appellee, Horizon National Contract Services, LLC ("Horizon"). For the reasons that follow, we reverse and remand.

## I. Facts and Procedural History

**{¶2}** At approximately 4:00 a.m. on August 24, 2007, appellant Hach, a 20-year employee of Giant Eagle, entered the Giant Eagle store located at 4428 Broadview Road, Richfield, Ohio. Hach managed the bakery at the Richfield store and was coming in early to prepare a special order.

**{¶3}** In her deposition, Hach stated that as she entered the store with the "cleaning guy," she saw the "flooring guy" standing by a floor-waxing machine next to the cash registers. Because there were no cones or caution tape placed in the area, Hach approached the man who was standing by the machine and asked him which way she should go to get to the bakery. He told her to go to the right and pointed in that direction. As Hach walked in the direction she had been directed to take, she slipped on a puddle of wet wax. Both the "cleaning guy" and the "flooring guy" came over to assist Hach, who had injured her arm, head, and back in her fall.

**{¶4}** As a result of her fall, Hach required surgery for a herniated lumbar disc.

Because of numerous surgical complications and several additional surgeries, Hach has been unable to resume her employment. Hach filed a claim with the Bureau of Workers' Compensation; Giant Eagle, as a self-insured employer, paid in excess of $25,000 as a result of her claim.

{¶5} On August 24, 2009, Hach and Giant Eagle filed suit against Horizon, alleging that Horizon was negligent in (1) creating or permitting the existence of a dangerous condition at Giant Eagle's store; (2) failing to properly and adequately warn appellants about the defect and dangerous condition; and (3) failing to properly screen, interview, hire, train, and monitor its employees and/or agents. Hach sought damages for her injuries caused by Horizon's alleged negligence; Giant Eagle sought reimbursement for workers' compensation and medical payments it had made as a result of Hach's injuries.

{¶6} Horizon answered the complaint and denied liability. It subsequently filed a motion for summary judgment. In its motion, Horizon admitted that at the time of Hach's fall, Horizon had a contract with Giant Eagle to provide floor-cleaning services. Horizon argued that it was not liable, however, because an employer is not liable for the negligent acts of an independent contractor. Horizon contended that it was "undisputed" that Horizon had subcontracted the cleaning services to Premier Image Enterprises, LLC ("Premier"), and that at the time of Hach's fall, Premier was performing such services at the Richfield Giant Eagle store pursuant to the Horizon–Premier contract. Horizon also

argued that appellants' claim failed because they had not joined Premier as a necessary and indispensable party to the suit.

{¶7} In their brief in opposition to Horizon's motion, appellants argued that Horizon did not produce credible evidence that Premier was working at the Richfield store on the day in question. Appellants argued further that even if Horizon had retained an independent contractor to work at the store, Horizon was liable because the contract between Giant Eagle and Horizon gave rise to a non-delegable duty by Horizon. Finally, appellants argued that Horizon was liable because a principal cannot delegate its duty regarding inherently dangerous work.

{¶8} The trial court subsequently granted Horizon's motion. Appellants now appeal from the trial court's judgment granting summary judgment in favor of Horizon.

## II. Standard of Review

{¶9} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77

Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶10} It is well established that the party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93, 662 N.E.2d 264 (1996). The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Id.* The nonmoving party has a reciprocal burden of specificity and must set forth specific facts showing that there is a genuine issue for trial. *Id.* The reviewing court evaluates the record in a light most favorable to the nonmoving party. *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990). Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

### III. Analysis

{¶11} In their first assignment of error, appellants contend that the trial court erred in granting summary judgment to Horizon.

{¶12} They first contend that the evidence relied upon by Horizon to support its motion for summary judgment did not meet the requirements of Civ.R. 56(E), which provides, in pertinent part, that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of

papers referred to in an affidavit shall be attached to or served with the affidavit. * * *

{¶13} As exhibits to its motion for summary judgment, Horizon presented its answers to appellants' first set of interrogatories, the Giant Eagle–Horizon contract, the Horizon–Premier Subcontractor Agreement, and the affidavit of Ronald Swertfager, Premier's owner. Appellants argue that Swertfager's affidavit and Horizon's answers to interrogatories did not meet the "personal knowledge" requirement of Civ.R. 56(E), and that the Horizon–Premier Subcontractor Agreement was "unauthorized and unauthenticated" because there was no affidavit attesting that the contract was what it purported to be. Therefore, they contend that the trial court erred in considering the documents.

{¶14} Appellants did not raise these arguments in the trial court, however, and thus have waived them for purposes of appeal. It is a fundamental rule of appellate procedure that a reviewing court will not consider as error any issue that a party failed to bring to the trial court's attention. *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982); *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).

{¶15} Moreover, this court has held that when ruling on a motion for summary judgment, a court in its discretion may consider documents not properly qualified per Civ.R. 56 when no objection has been made by the opposing party. *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222, 515 N.E.2d 632 (8th Dist.1986), citing

*Brown v. Ohio Cas. Ins. Co.*, 63 Ohio App.2d 87, 90, 409 N.E.2d 253 (8th Dist.1978); *Rodger v. McDonald's Restaurants of Ohio, Inc.*, 8 Ohio App.3d 256, 456 N.E.2d 1262 (8th Dist.1982), paragraph one of the syllabus. Appellants raised no objection to the documents below and thus the trial court had discretion to consider them in rendering its summary judgment decision.

{¶16} Nevertheless, we find that the trial court erred in granting summary judgment to Horizon. The gist of Horizon's motion for summary judgment was that it had subcontracted the janitorial services for Giant Eagle to Premier and, therefore, it was not liable for any injury to Hach resulting from her fall. We agree with Horizon's contention that, as a general rule, one who engages an independent contractor is not liable for the negligent acts of the contractor or its employees. *Pusey v. Bator*, 94 Ohio St.3d 275, 762 N.E.2d 968 (2002). But we cannot agree with Horizon's contention that it was "undisputed" that at the time of Hach's fall, Premier, and not Horizon, was performing janitorial services at Giant Eagle's Richfield store.

{¶17} To support its assertion that Premier was performing subcontracting services at Giant Eagle's Richfield store on the date in question, Horizon pointed to its answers to appellants' first set of interrogatories, the Giant Eagle–Horizon contract, the Horizon–Premier Subcontractor Agreement, and the affidavit of Ronald Swertfager, all of which were attached as exhibits to its motion for summary judgment.

{¶18} Horizon's answers to interrogatories stated the following, in pertinent part:

At the time of the events described in Plaintiffs' Complaint, Horizon was in the contract management business. Horizon provided nationwide retail customers with floor maintenance through a network of qualified subcontractors.

Horizon provided subcontractors to Giant Eagle from approximately January 1, 2003 through approximately December 1, 2007, when it was sold through an asset purchase.

Upon information and belief, the employer of the person supervising the cleaning crew on the evening of August 23, 2007 through August 24, 2007, was the subcontractor Horizon retained to service the store, Premier Image Enterprises, Inc.[sic] * * *.

Upon information and belief, all individual[s] working in the store were employees of the subcontractor, Premier Image Enterprises, Inc., then located at 383 Moccasin Trial, Girard, Ohio, 44420.

{¶19} The Horizon–Premier Subcontractor Agreement stated that Premier would provide facilities maintenance and cleaning services to Horizon on a subcontractor basis. With respect to the location of such services, the Subcontractor Agreement stated:

Services shall be performed by the Subcontractor only at the locations specified in a service specification addendum (Exhibit 1) given by Horizon to the Subcontractor. Subcontractor agrees not to render services to Horizon or for or on behalf of any Customer unless the same are listed in Exhibit 1, and Horizon shall not be liable to pay the Subcontractor for any services which are not listed in Exhibit 1.

Although referenced, no exhibits were attached to the SubcontractorAgreement.

{¶20} Swertfager's affidavit stated that in October 2010, he received a subpoena from appellants' counsel requesting that Premier produce "the names and addresses of all employees and supervisors of Premier Image Enterprises, LLC working at Giant Eagle, Store #179, located at 4428 Broadview Road, West[sic] Richfield, Ohio on the evening of August 23, 2007 through the morning of August 24, 2007 and any and all time card or

other records evidencing their employment on said dates," as well as any incident reports related to Hach's fall.

{¶21} Swertfager averred that Premier maintains records in the usual course of business and that, pursuant to the subpoena, he had gone through all of Premier's records for the years 2006 through 2009. He stated that he had "exhausted all possible means of locating responsive information or documents," but that he had been

> unable to locate any records related to work done at Giant Eagle, Store #179, located at 4428 Broadview Road, West[sic] Richfield, Ohio, for the requested time period or otherwise including, but not limited to, the requested names and addresses of all employees and supervisors of Premier Image Enterprises, Inc., evidence of their employment, and incident reports for the specific time period and location.

{¶22} Swertfager further averred that upon his "independent recollection and belief," another contractor by the name of Alexander Kryachkov "may have been subcontracted with Premier Image Enterprises, LLC for work at the subject location during the subject time period. * * * However," Swertfager stated, "I have no information independent of my recollection to confirm that he was, in fact, the independent contractor working at the subject location on the specific date."

{¶23} So who was working at the Richfield Giant Eagle store on the day in question? As appellants pointed out in their brief in opposition to Horizon's motion, the Horizon–Premier Subcontractor Agreement was missing all of its referenced exhibits and addenda. Significantly, "Exhibit 1," which would have identified the locations at which Premier was to act as a subcontractor for Horizon, was missing. Also missing from the

pages of the Subcontractor Agreement was any reference whatsoever to Giant Eagle. A person reading the Agreement would have no basis to conclude that it covered cleaning services at any Giant Eagle store, much less at the Richfield Giant Eagle store where Hach fell.

{¶24} Furthermore, although Horizon contends that its answers to interrogatories demonstrate that Premier was working at the store on the day in question, Swertfager's affidavit calls that assertion into question. Swertfager averred that he maintained business records in the normal course of business and had conducted an exhaustive search of Premier's business records, but was unable to locate any records whatsoever related to any work Premier had done at the Giant Eagle Richfield store. Swertfager did not, as appellants contend, deny that Premier worked at the Richfield store. Nevertheless, appellants correctly point out that one can draw an inference from Swertfager's statement that he keeps records but after an exhaustive search could not locate any records relating to the Richfield Giant Eagle store, that Premier was not working at the Richfield store on the day in question and, in fact, never worked at the store at all. Furthermore, Swertfager's assertion that Alexander Kryachkov "may" have subcontracted with Premier to perform the work at Giant Eagle creates even more doubt as to who was actually working at the store when Hach fell.

{¶25} In their brief in opposition to Horizon's motion, appellants presented evidence indicating that agents or employees of Horizon were indeed providing cleaning

and waxing services at the store on the morning of August 24, 2007. Attached as an exhibit to appellants' brief in opposition to Horizon's motion was an Incident Report prepared by Giant Eagle. The report indicates that Hach's fall was reported to Giant Eagle at 9:00 a.m. on August 24, 2007, a few hours after it happened. The report states that "Linda slipped and fell on wax as she came in. We were having the floor recoated," and that the witnesses to the incident were "2 members of [the] floor care company (Horizon)." Also attached to appellants' brief in opposition was Giant Eagle's Management Incident Investigation Report regarding the incident. This report indicates that Hach "was entering building and slipped on wax — no 'wet floor' signs used during wax" and "floor care person[n]el" that "Horizon oversees" were present and witnessed Hach's fall.

{¶26} Despite Horizon's assertion otherwise, the documents attached to its motion for summary judgment do not establish that an independent contractor of Horizon was performing the work at issue, while the documents attached to appellants' brief in opposition demonstrate that the floor care personnel working that day were indeed Horizon employees and not those of an independent contractor. We can only conclude that there is a genuine issue of material fact regarding whether employees of Horizon or an independent contractor were working at Giant Eagle's Richfield store when Hach fell. Accordingly, the trial court erred in granting summary judgment to Horizon.

{¶27} Appellants also contend that the trial court erred in granting summary

judgment to Horizon because as an independent contractor of Giant Eagle, Horizon owed Hach a duty of care to guard against the danger created when it waxed the floor. Appellants cite *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992), for the proposition that an independent contractor who creates a dangerous condition can be held liable for failure to warn of the dangerous condition. In order for Horizon to be liable under *Simmers*, appellants must establish that Horizon was the entity that created the dangerous condition that led to Hach's fall. Although Horizon asserts that it did not physically perform the work and the "only evidence" is that Horizon did not have any employees on-site when Hach fell, we have already determined that there is an issue of fact as to who was performing the cleaning services at Giant Eagle's Richfield store on the morning of August 24, 2007.

{¶28} Appellants also argue that the trial court erred in granting summary judgment to Horizon because even if Horizon subcontracted the work, under the terms of Horizon's agreement with Giant Eagle, Horizon had the right to control the manner and means of performing the work. Therefore, appellants contend, any cleaning personnel were employees or agents of Horizon, and Horizon is liable under the doctrine of respondeat superior.

> Whether an individual performing service for another does so as an independent contractor or as an employee is ordinarily a question of fact, the deciding factor being in whom is vested the right of control or superintendence as to the details of the work. If the right to control the manner or means of performing the work is in the person for whom the service is performed, the relationship is that of employer and employee or

master and servant; but if the control of the manner or means of performing the work is delegated to the person performing the service, the relationship is that of independent contractor.

*Behner v. Ind. Comm.*, 154 Ohio St. 433, 96 N.E.2d 403 (1951), paragraph one of the syllabus.

{¶29} Horizon argues that the Horizon–Premier Subcontractor Agreement demonstrates that it delegated control of the manner and means of performing the cleaning services to Premier, and that Premier was thus an independent contractor. The Subcontractor Agreement provides that Premier "shall be solely responsible for determing the methods, details, and means of performing services" under the Agreement, which suggests that Horizon delegated the manner and method of performing the work to Premier. As discussed above, however, there is a genuine issue of material fact regarding whether Horizon subcontracted the cleaning services for the Richfield Giant Eagle store to Premier.

{¶30} Appellants also argue that the trial court erred in granting summary judgment because Horizon's duty of care to Hach arose out of its agreement with Giant Eagle. Assuming, without deciding, that Hach (who was not a party to the agreement) has standing to sue under the Giant Eagle–Horizon agreement, Ohio law is clear that a contract is to be sued upon in contract, not in tort. As this court stated in *Lightbody v. Rust*, 8th Dist. No. 80927, 2003-Ohio-3937, ¶ 29:

"Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action

is one of contract." *Schwartz v. Bank One*, 84 Ohio App.3d 806, 810, 619 N.E.2d 10 (1992). * * * "It is not a tort to breach a contract, no matter how willful or malicious the breach." *Salvation Army v. Blue Cross and Blue Shield*, 92 Ohio App.3d 571, 578, 636 N.E.2d 399 (8th Dist.1993).

*See also Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983) ("It is no tort to breach a contract, regardless of motive.")

**{¶31}** A cause of action in tort for breach of a contract arises "only in those contract situations where a special or fiduciary relationship exists between the parties and imposes a duty of good faith" in performance of the contract. *Empire-Detroit Steel Div. Cyclops Corp. v. Penn Elec. Coil, Inc.*, 5th Dist. No. CA-2903, 1992 WL 173313 (June 29, 1992). That is not the situation here and, accordingly, any tort claim by appellants based on Horizon's alleged breach of contract necessarily fails.

**{¶32}** Nevertheless, because there is a genuine issue of material fact regarding whether Horizon or another entity was performing the janitorial services at Giant Eagle's Richfield store on the morning of August 24, 2007, the trial court erred in granting summary judgment to Horizon. Appellants' first assignment of error is sustained.

**{¶33}** In their second assignment of error, appellants contend that the trial court erred in denying their motions to compel, for a protective order, and for sanctions. They contend that it was error for the trial court to deny them access to the information sought by these motions (the identity of persons who were cleaning the floors when Hach fell and the relationship of those persons to Horizon) and then grant summary judgment to Horizon.

{¶34} A trial court has broad discretion regarding discovery matters. *Kelley v. Ferraro*, 188 Ohio App.3d 734, 2010-Ohio-2771, 936 N.E.2d 986, ¶ 84 (8th Dist.). Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. *Id.* We find no abuse of discretion here.

{¶35} Appellants' motion to compel sought supplemental discovery relating to the identity of Premier. Horizon supplemented its prior discovery responses by disclosing the name of Premier's owner one day after appellants filed the motion to compel. Thus, the motion to compel was moot and properly denied because Horizon had already supplemented its discovery responses by the time the trial court considered the motion.

{¶36} Appellants sought a protective order to relieve them from any obligation of responding to Horizon's request for discovery until Horizon had responded to appellants' request for supplementation of its discovery responses. This motion likewise was moot when the trial court considered it because Horizon had already supplemented its responses.

{¶37} Appellants also filed a motion for sanctions against Swertfager, asserting that he had not timely responded to the subpoena directing him to produce documents relating to Premier. But the record demonstrates that Swertfager contacted appellants' counsel within a few days of receiving the subpoena, and within three weeks responded to it by providing the only information available to him. The record reflects that Swertfager diligently attempted to comply with the subpoena and, accordingly, any

imposition of sanctions was not warranted.

{¶38} On this record, the trial court did not abuse its discretion in denying appellants' discovery motions and the second assignment of error is therefore overruled.

{¶39} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MARY J. BOYLE, P.J., DISSENTS WITH SEPARATE OPINION.

MARY J. BOYLE, P.J., DISSENTING:

{¶40} I respectfully dissent. I would affirm the trial court's judgment.

{¶41} Plaintiffs-appellants, Giant Eagle and Linda Hach, filed a complaint against Horizon alleging that Horizon was negligent for creating or permitting a dangerous condition, for failing to warn, and for failing to properly hire and train its employees.

The plaintiffs alleged that Hach was injured by Horizon when she slipped and fell on a "puddle of wet wax" in Giant Eagle. This is a simple negligence case involving a "slip and fall."

**{¶42}** Horizon claims it is not liable because it hired an independent contractor to clean Giant Eagle's floors. Giant Eagle and Hach assert that a question of fact remains as to whether an independent contractor or an employee or agent of Horizon was present when Hach slipped and fell. Because we must view the evidence in a light most favorable to plaintiffs, the nonmoving parties, I agree that a question of fact remains as to whether the "flooring guy" was an agent or employee of Horizon. Nonetheless, I would still affirm the trial court granting summary judgment to Horizon — because no matter what company was waxing Giant Eagle's floors that day, it is my view that the company would not be liable for Hach's injuries as a matter of law.

**{¶43}** Horizon was an independent contractor hired by Giant Eagle to clean its floors. If Horizon subcontracted the work, then that subcontractor was also an independent contractor. Thus, no matter what company, our analysis is the same for purposes of determining liability to Hach.

**{¶44}** "To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10, citing *Robinson*

*v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21. We must determine if the floor-cleaning company (an independent contractor) owed Hach a duty, and if so, what the appropriate standard of care was.

**{¶45}** When an independent contractor does not have a property interest in the premises, as the floor-cleaning company here, the Ohio Supreme Court explained that one must "look to the law of negligence to determine [the independent contractor's] duty of care[.]" *Simmers v. Bentley Const. Co.*, 64 Ohio St.3d 642, 645, 597 N.E.2d 504 (1992). The high court stated:

> Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position. * * * Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone. * * *   (Citations omitted.)

**{¶46}** In *Emrich v. Grady Mem. Hosp.,* 5th Dist. No. 04CAE04030, 2004-Ohio-6753, the court explained that cleaning floors does not involve an inherently dangerous activity, and thus, was a delegable duty. The *Emrich* court further explained the duty owed by an independent contractor hired by a hospital to provide janitorial services to the hospital:

> The appropriate standard is the duty to care. The duty to appellants in this case depends upon the relationship between the parties and the foreseeability to someone in appellant's position. It is clear the hallway wherein appellant slipped was a well-traveled corridor in the hospital and Capital Services should have known individuals would traverse the area. The standard of care would be a general negligence standard. *Id.* at ¶ 32.

**{¶47}** Hach maintains that the "flooring guy" should have warned her that the

floor was slippery or wet. But it was 4:00 a.m.; Hach came in early to prepare for a big bakery order. The store was closed. I cannot say that failure to post warning signs was negligent when the store was closed.

{¶48} Further, Hach admitted in her deposition that she knew that floor was being waxed because she saw a floor-waxing machine and what she thought was a "flooring guy," standing next to the machine. She said that she asked the unknown man which way she should go, and he pointed to the right. But Hach should have known that the floors could be slippery. She chose to walk in the area where she knew they were cleaning.

{¶49} Accordingly, I would affirm the trial court's granting summary judgment to Horizon.