[Cite as *DiCuccio v. Lindsmith*, 2018-Ohio-2320.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| N. Gerald DiCuccio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-77 |
| v. | : | (C.P.C. No. 14CV-11538) |
| Quintin Lindsmith, Esq. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 14, 2018

**On brief:** *Moore & Yaklevich* and *John A. Yaklevich,* for appellant. **Argued:** *John A. Yaklevich.*

**On brief:** *Frost, Brown, Todd, LLC,* and *Stephen E. Chappelear,* for appellees. **Argued:** *Stephen E. Chappelear.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, N. Gerald DiCuccio, appeals from the December 29, 2016 judgment of the Franklin County Court of Common Pleas granting Wrightsel & Wrightsel and R. Douglas Wrightsel's (collectively "appellees") motion for sanctions. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The facts relevant to this appeal are as follows. Appellant and Attorney Alphonse P. Cincione are partners in the law firm of Butler, Cincione & DiCuccio. Cincione drafted the Will, the Trust, the Second Amendment to the Trust, and the Draft Power Of Attorney ("POA") that are discussed in this opinion. Appellant is an attorney and has been continuously engaged in the private practice of law for 50 years.

{¶ 3} Anne Marie Gante was the widow of Dr. Helmut Gante. Dr. Gante died on February 17, 2013. Mrs. Gante was the beneficiary of a Trust, which named Dr. Gante and

Mrs. Gante as co-trustees. Under the terms of the Trust, upon Dr. Gante's death, Mrs. Gante would become the sole trustee and the sole beneficiary of the Trust. Dr. Gante's sister, Sigrid Griffiths, was the remainder beneficiary of the Trust and successor-trustee.

{¶ 4}  Approximately ten months after Dr. Gante's passing, appellant notified Mrs. Gante that there was a Second Amendment to the Trust, which was signed by Dr. Gante and Mrs. Gante. This amendment substituted appellant as the successor-trustee once Dr. Gante had died.

{¶ 5}  The Second Amendment was the main point of contention between appellant and Mrs. Gante. Mrs. Gante challenged appellant's claims to be the successor-trustee arguing that she, as sole beneficiary, did not want appellant to serve as trustee, and that the Second Amendment was invalid, unenforceable, ineffective, and had been revoked by Dr. Gante's subsequent actions.

{¶ 6}  By way of history, the Trust at issue was executed on May 5, 1993.  Over ten years later, on March 23, 2005, Dr. Gante, apparently in poor health and concerned about his wife's ability to act as successor-trustee, executed and twice signed the Second Amendment to the Trust. Mrs. Gante also signed the Second Amendment. The Second Amendment removed Mrs. Gante's nomination as trustee and replaced her with appellant.

{¶ 7}  In 2011 or 2012, Dr. Gante contacted Cincione and appellant to inquire about a limited POA for Mrs. Gante that would allow her to remain in the family home after Dr. Gante's death. Appellant and Cincione sent Dr. Gante their standard draft POA which gave the attorney-in-fact the power to place Mrs. Gante in a nursing home. The Gantes were not happy with the broad draft POA.

{¶ 8}  Shortly thereafter, Dr. Gante asked a relative to help him find another attorney, unassociated with Butler, Cincione & DiCuccio, to assist him in estate matters. Dr. Gante wanted new estate plans drafted to alleviate his worries. Dr. Gante was referred to attorney Karen Moore of the Bricker and Eckler firm. Dr. Gante provided Moore with copies of the Will, the Trust, and the First Amendment. Neither Dr. Gante nor Mrs. Gante provided a copy of the Second Amendment to Moore. Apparently, neither Dr. Gante nor Mrs. Gante recalled the March 23, 2005, execution of the Second Amendment.

{¶ 9}  Moore drafted a new Last Will ("the draft Will") which nominated Mrs. Gante as executor, and Clayton R. Jones as the alternate executor, removing any mention of Cincione and appellant. Jones is Dr. Gante's long time investment advisor who works at

Merrill Lynch Wealth Management ("Merrill Lynch"). Moore also drafted an Amended and Restated Trust Agreement ("the draft Trust") which nominated Dr. Gante and Mrs. Gante as co-trustees. If neither Dr. Gante nor Mrs. Gante were able to serve as trustee, the draft Trust nominated Jones as successor-trustee. The draft Trust removes any mention of appellant.

{¶ 10}   Because of changes involving federal and state estate tax laws, the drafts were not completed until sometime in January 2013.  Moore scheduled a date in late February 2013 for Mr. Gante to sign the draft Will and the draft Trust. On February 17, 2013, prior to being able to sign the draft Will and draft Trust, Dr. Gante died.

{¶ 11}  After the death of Dr. Gante, pursuant to the terms of the original Trust, Mrs. Gante proceeded to function as the trustee of the Trust with the help of Jones, Moore, and attorney Quintin Lindsmith, also of the Bricker and Eckler firm. Sometime in October 2013, over eight months after Dr. Gante's death, Cincione reminded appellant of appellant's nomination as successor-trustee of the Trust pursuant to the Second Amendment, a signed copy of which was located at the law firm of Butler, Cincione & DiCuccio.

{¶ 12} Appellant hired attorney Thomas Taneff to help administer the Trust. Appellant also hired himself as an attorney to represent himself as trustee. Appellant proceeded to bill for his time at his legal rate of $400 per hour in .25 hourly increments. Appellant and Cincione accumulated roughly $33,703 in attorney fees and costs for work on the Trust from January 7, through October 15, 2014.  Appellant continued to accrue attorney fees which he planned to submit to the trustee of the Trust once the legal actions were finished.

{¶ 13}  At this time, Moore was representing Mrs. Gante concerning her estate plan. Mrs. Gante and Ms. Griffiths were very clear that they did not want appellant as trustee. Moore asked appellant to decline the trusteeship, but he refused to do so.

{¶ 14}  On April 8, 2014, almost 14 months after Dr. Gante died,  Taneff, on behalf of appellant, filed a Complaint for Declaratory Judgment in the Franklin County Probate Court, case No. 565931A ("the Probate case"),  seeking a declaratory judgment that he was the trustee of the Helmut Gante Trust, and injunctive relief against Mrs. Gante.  Appellant named as defendants his law partner Cincione, as executor of the estate of Dr. Gante, Mrs. Gante, and Ms. Griffiths. Cincione was eventually dismissed as a defendant.

{¶ 15} On May 6, 2014, Mrs. Gante filed her answer and counterclaim to appellant's complaint. The counterclaim asserted that Dr. Gante lacked the requisite mental capacity at the time of the signing to create the Second Amendment, and that, in 2012, Dr. Gante had become furious with appellant, fired him, and hired Moore for his estate planning needs. Finally, the counterclaim contended that, even if the Second Amendment was valid, appellant should be removed as successor-trustee because, among other things, Mrs. Gante and Ms. Griffiths did not want appellant to serve as trustee, and appellant was unfit to serve. At this time, Mrs. Gante was represented by Lindsmith and appellees.

{¶ 16} A meeting occurred and a series of communications were exchanged by counsel in October 2014 in an attempt to settle this matter. On October 29, 2014, at 4:32 p.m., Lindsmith e-mailed Taneff and expressed shock at the conduct reflected in appellant's fee statements, including multiple conflicts of interest, collusion, breaches of fiduciary duty, overstaffing, and overbilling, and proposed a settlement that was less than half of the fees sought by appellant. Immediately thereafter, at 4:42 p.m., appellant instructed Taneff to send materials to attorney Gary Hammond that would support a tortious interference suit against Mrs. Gante's lawyers. Appellant spent two hours that day conferring with Taneff, preparing materials to transfer to Hammond, and talking to Hammond. Later, Hammond and appellant met to discuss the potential suit.

{¶ 17} Taneff wrote to Lindsmith on November 4, 2014, informing him that the proposed settlement draft was unacceptable. In the meantime, appellant and Hammond were conferring and preparing to sue Mrs. Gante's lawyers. Following their meeting on October 29, they had three telephone conversations on October 30, and met in person on October 31, 2014. They met again on November 4, and talked by telephone on November 5, 6, and 7, 2014.

{¶ 18} Appellant signed an agreement with Hammond that all of Hammond's fees for suing Mrs. Gante's lawyers would be paid by the Gante Trust, of which Mrs. Gante was the sole beneficiary. Under this agreement, Mrs. Gante would pay appellees and Lindsmith to defend her from appellant's lawsuit, and she would also have to pay appellant's lawyer for suing her lawyers.

{¶ 19} On November 7, 2014, Hammond, on behalf of appellant and with his approval, filed a complaint in the Franklin County Court of Common Pleas, case No. 14CV-11538 ("the common pleas case") claiming legal malpractice, tortious interference and

money damages against opposing counsel in the probate case, including Lindsmith, Moore, the Bricker and Eckler law firm, appellees (Wrightsel, and the Wrightsel & Wrightsel law firm), Jones, and Merrill Lynch Wealth Management. Appellant also served with the complaint interrogatories, a request for production of documents, and requests for admissions.

{¶ 20} After appellant filed the common pleas case, Merrill Lynch ceased releasing funds for Mrs. Gante's monthly living expenses and monthly payroll, without first securing approval of all parties concerned. The interruption in the release of trust funds resulted in overdraft fees, returned checks, delays in crediting deposits, cash flow emergencies, and distress to Mrs. Gante. On April 10, 2015, the Probate Court signed an agreed entry authorizing Merrill Lynch to deposit funds with the clerk of court to cover Mrs. Gante's monthly expenses.

{¶ 21} In the common pleas case, in early January 2015, defendants, including appellees, filed motions to dismiss. Defendants noted that the defendant-lawyers had never represented appellant (who had his own attorney), and that under controlling authority of the Supreme Court of Ohio, an attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of his client. However, appellant did not withdraw his complaint. Instead, he opposed the motions to dismiss and refused to agree to a stay of discovery necessitating the filing of reply memoranda. On February 19, 2015, the common pleas court scheduled the case for trial on April 1, 2015. One week later, on February 26, 2015, appellant filed a voluntary dismissal without prejudice.

{¶ 22} In the Probate case, a hearing was held on July 28 and 29, 2015. The Probate Court issued a judgment entry on August 31, 2015, which deemed appellant to have rejected the trusteeship by not accepting it within a reasonable time after Dr. Gante's death. The Probate Court further found that appellant did not "live up to his moral obligation to Dr. Gante and Mrs. Gante" and that his actions contributed to the creation of an acrimonious relationship with Mrs. Gante, the sole beneficiary of the Trust, which also warranted his removal as trustee. (Aug. 31, 2015 Jgmt. Entry at 23.) No appeal was taken from the Probate Court's judgment entry.

{¶ 23} In the common pleas case, on June 19, 2015, appellee filed a motion for sanctions against appellant and Hammond. A hearing was held on November 3, and

November 14, 2016. The trial court made the following findings and issued the following order:

> Based on the evidence presented at the hearing, the Court finds that DiCuccio clearly abused the judicial process and thwarted the administration of justice. DiCuccio, who is an attorney, filed the underlying action for a declaratory judgment * * *. However, * * * once he was met with resistance by the elderly widow and her counsel, he sued her attorneys without a good faith basis in law or in fact.
>
> * * *
>
> In the Court's opinion, DiCuccio has a clearly wrongful motive in having Hammond sue Wrightsel and his co-counsel. * * * This was nothing short of an attempt to intimidate Mrs. Gante and her counsel, to interfere with their attorney-client relationship, and to gain a tactical advantage in litigation. The act of suing an opposing attorney for doing his or her job is something that the law, and this Court, cannot and will not permit. The Court finds, for the reasons stated in this Decision, that DiCuccio willfully abused the judicial process by having Hammond file and prosecute this action. * * * [T]here was simply no good reason, in law or in fact, for DiCuccio to pursue, through his attorney, a tortious interference claim.
>
> * * *
>
> These troubling actions by DiCuccio, * * * paint a portrait of someone who was far more concerned with his own welfare as opposed to the overall welfare of Mrs. Gante. Certainly, they negatively affect the overall credibility of DiCuccio as a witness herein.
>
> * * *
>
> [T]here was considerable evidence of DiCuccio's motive in filing this action. He was faced with significant opposition and * * * had a financial interest in the trust action in the range of $100,000.00. He had been unsuccessful in litigation in achieving the outcome he sought. He learned that opposing counsel believed he was overbilling and that they wanted him to settle for roughly half of what he believed he was owed. All of that prompted him to consult with Attorney Hammond and file this case.

That is not the limit of the evidence of willfulness. Wrightsel and his counsel have presented the Court with extensive evidence that DiCuccio and Hammond knew, based on prior litigation, that the claims in this case were without merit. *In Morrow v. Reminger & Reminger,* Franklin C.P. No. 08CVH-010681, Hammond was counsel for the plaintiffs in a lawsuit against a law firm claiming tortious interference. DiCuccio was among the plaintiffs. DiCuccio and his co-plaintiffs were not represented by the Reminger firm. Judge Bessey entered summary judgment for the defendants based on *Andrews v. Carmody*, *supra*. The plaintiffs appealed and the Tenth District affirmed. *Morrow v. Reminger & Reminger CO.*, L.P.A., 183 Ohio App.3d 40, 2009-Ohio-2665, (10th Dist.). In filings in another action, *Swiss Reinsurance America COrp., Inc. v. Roetzel & Andress*, 163 Ohio App.3d 336, 2005-Ohio-4799 (9th Dist.), Hammond discussed at length attorney immunity under *Scholler* and the earlier case of *Simon v. Zipperstein*, 32 Ohio'St.3d 74, 512 N.E.2d 636 (1987). Hammond knew of attorney immunity under *Scholler* but filed this action nonetheless.

* * *

DiCuccio wanted to drive a wedge between Mrs. Gante and her counsel and to use this action as bargaining power. The Court cannot and will not condone such conduct. It runs in the face of some of the most deeply held beliefs of the attorney-client relationship. Wrightsel's duties were, are, and must remain to his client, not DiCuccio or other third parties. Attorneys cannot be the subjects of lawsuits like the one filed here because they are simply doing their jobs. Such conduct is made in bad faith, vexatiously, wantonly, obdurately, and for oppressive reasons.

The Court therefore finds that DiCuccio and Hammond acted willfully in filing and prosecuting this complaint without good ground in law and fact to support it.

* * *

Therefore, considering the rate charged and the number of hours charged, the Court believes that the lodestar amount of attorney fees sought by Wrightsel, $41,523.60, is reasonable.

* * *

The final question is the proportional allocation of fees between DiCuccio and Hammond. * * * [T]his Court finds that DiCuccio

was the driving force behind the filing and prosecution of this litigation. He had the financial motivation to press his role as alleged Trustee which led him to file this action. He decided to look at retaining Hammond and filing this action because he realized in settlement discussion that he would not receive from the Trust an amount that he deemed satisfactory. Although Hammond signed the pleading, DiCuccio, as the client, was directing this conduct. In so doing, DiCuccio was deliberately abusing the judicial process. The Court believes, based on the evidence of their respective roles, that DiCuccio should be responsible for 80% of the above sanction and Hammond should be responsible for 20%.

In conclusion, Wrightsel's Motion for Sanctions is GRANTED. DiCuccio is hereby Ordered to pay attorney fees of $33,274.43 and expenses of $55.56 and Hammond is Ordered to pay attorney fees of $8,318.61 and expenses of $13.88.

(Dec. 29, 2016, Decision and Entry at 5-7, 12, 14-17)

{¶ 24} Hammond paid his portion of the ordered attorney fees and expenses on or before January 10, 2017, and did not appeal.

## II. ASSIGNMENT OF ERROR

{¶ 25} Appellant appeals and brings the following assignment of error:

THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES AGAINST PLAINTIFF-APPELLANT.

## III. DISCUSSION

{¶ 26} Appellant argues that the trial court erred in awarding attorney fees against him because such imposition was contrary to law because (1) the record plainly establishes that the common pleas case was initiated on advice of appellant's counsel and prosecuted by appellant's counsel, (2) the American Rule regarding attorney fees applies, and (3) appellee was not a prevailing party. In addition, although appellant does not allege this as an assignment of error, appellant argues that the trial court erred in allocating 80 percent of the attorney fees award against appellant. Appellant's arguments lack merit.

{¶ 27} The standard of review for a court's imposition of sanctions under its inherent power is abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Telecom Ltd. v. Wisehart & Wisehart, Inc.,* 10th Dist. No. 11AP-1147, 2012-Ohio-4376, ¶ 18. When reviewing an award of attorney fees, a reviewing court will not reverse the award unless the trial court abused its discretion. *Kemp, Schaeffer & Rowe Co., L.P.A. v. Frecker*,

70 Ohio App.3d 493, 497 (10th Dist.1990). An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 506 (1992); *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 806, 2008-Ohio-3948 (10th Dist.).

{¶ 28} When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 138 (1991), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). Above all, under this standard, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use their observations in weighing the credibility of the proffered testimony. *Jane Doe 1*, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Review of a trial court's factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings. *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 35.

{¶ 29} As the trial court noted, it could not sanction appellant under Civ.R. 11 because he did not sign any pleadings, motions or other documents filed in the common pleas case. Instead, any sanction must derive from the court's inherent authority to punish those who interfere with the administration of justice or abuse the judicial process.

{¶ 30} Courts possess inherent authority to sanction a party, even a represented party such as appellant, where that party's conduct thwarts the administration of justice, disobeys court orders, abuses the judicial process, or when it is otherwise necessary for the administration of justice and protection of judicial powers and processes. *Telecom, Ltd.* at ¶ 15. *See Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 289 (9th Dist.1992) (Courts' inherent authority permits sanctions against parties or attorneys "when the judicial process is abused").

{¶ 31} Appellant sued appellee for legal malpractice and tortious interference. The trial court decided that both claims lacked good grounds in law and fact. We agree. To establish a cause of action for legal malpractice, a plaintiff must show, among other things, that the attorney owed a duty or obligation to the plaintiff. *Vahila v. Hall*, 77 Ohio St.3d 421 (1997), syllabus. An attorney is immune from liability to third persons arising from his

performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously. *Scholler v. Scholler*, 10 Ohio St.3d 98 (1984), paragraph one of the syllabus.

{¶ 32} Throughout the underlying declaratory judgment action, appellees represented Mrs. Gante, the beneficiary of a trust who disputed appellant's right to serve as the trustee. Appellees never represented appellant, who had his own attorney. There was no reasonable belief that appellees representation was of anyone but the defendants in the Probate case. Mrs. Gante, as the beneficiary, owed no duty to appellant. There was no privity between appellant and appellees. In addition, the argument that appellees acted with malice is utterly without evidentiary support. First and foremost, appellees were successful on the merits of the trust dispute. Appellant's legal malpractice claim was not supported by good grounds, i.e., facts.

{¶ 33} The case law is quite clear that *Scholler* immunity also protects attorneys from tortious interference claims. In both *Sprouse v. Eisenman*, 10th Dist. No. 04AP-416, 2005- Ohio-463, ¶ 11, and *Andrews v. Carmody*, 145 Ohio App.3d 27, 34 (11th Dist.2001), courts of appeals held that a tortious interference claim cannot succeed against opposing counsel. Appellant's tortious interference claim also lacked good grounds.

{¶ 34} The trial court held a hearing on appellees' motion for sanctions over a two-day period in November 2016, and heard testimony from appellant, appellee Wrightsel, Hammond, and Lindsmith. Numerous exhibits from both parties were admitted and post hearing briefs were filed.

{¶ 35} The trial court found that appellant had a wrongful motive in filing the common pleas case, i.e., appellant was attempting to intimidate Mrs. Gante and her counsel, to interfere with their attorney-client relationship, and to gain a tactical advantage in the Probate case litigation. As such, the trial court held that appellant willfully abused the judicial process by having Hammond file and prosecute this action. The trial court found there was simply no good reason, in law or in fact, for appellant to pursue a legal malpractice and tortious interference claim and such conduct was made in bad faith, vexatiously, wantonly, obdurately, and for oppressive reasons. The trial court also found that appellant and Hammond knew that, based on prior litigation, the claims in the common pleas case were without merit.

{¶ 36} Appellant argues that he plainly acted on advice of counsel and, accordingly, is not liable for attorney fees. He argues that under Ohio law, advice of counsel is a valid defense to a claim for attorney fees, citing *State ex rel. Davis v. Metzger*, 5th Dist. No. 11-CA-130, 2014-Ohio-4555, ¶ 14 ("we conclude that all of the actions [of relator Davis] were on the advice of counsel and therefore relator is not liable for frivolous conduct and sanctions"), and *State ex rel. Davis v. Metzger*, 145 Ohio St. 3d 405, 2016-Ohio-1026, ¶ 13 ("[t]he court of appeals found that the actions were undertaken on advice of counsel and therefore only Davis's attorney is liable for frivolous conduct and sanctions.").

{¶ 37} However, the *Davis* cases provide no support for appellant's position that advice of counsel insulates him from liability for sanctions. The *Davis* cases are frivolous conduct cases, brought pursuant to R.C. 2323.51, which provides for frivolous conduct fee awards. Appellant cites to no cases that stand for the proposition that a client who has a lawyer and relies on that lawyer for advice may not be sanctioned under the inherent authority of the court. In addition, it is apparent, unlike this case, that the trial court in *Davis* found that *all* of the actions of relator Davis were on the advice of counsel.

{¶ 38} In the present case, appellant actively gathered material to send to Hammond so he could file a tortious interference action. Appellant was an active participant in preparing the lawsuit. He met with or talked over the phone with Hammond about the lawsuit nine times in less than a week. They talked extensively, as Hammond described it. (Tr. at 106.) At the sanctions hearing, and in his post hearing brief, appellant never disavowed the actions of his lawyer as beyond the scope of what he wanted. He never claimed that Hammond led him astray by advancing legal claims that were meritless, and that he had no knowledge of what Hammond was up to, or disagreed at all with what Hammond was doing. As such, appellant's argument that he cannot be sanctioned because he relied on advice of counsel lacks merit.

{¶ 39} Appellant next argues that "Ohio has long adhered to the American rule with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation," citing *Wilborn v. Banc One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-396, ¶ 7.

{¶ 40} Appellant acknowledges in his brief, citing *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St.2d 177, 181 (1976), that there are exceptions to the American Rule where a court may award attorney fees where a party has acted in bad faith,

vexatiously, wantonly, obdurately, or for oppressive reasons. (Appellant's brief at 6.) He then claims that "the trial court's decision is not based on bad faith." (Appellant's brief at 12.) He is wrong. On page 16 of the Decision and Entry on Motion for Sanctions, the trial court reviewed appellant's intimidation tactic used to try to gain an upper hand in the trust case and his efforts "to drive a wedge between Mrs. Gante and her counsel and to use this action as bargaining power," and said, "[s]uch conduct is made in bad faith, vexatiously, wantonly, obdurately, and for oppressive reasons." In addition, appellant admits that another exception to the American Rule is when attorney fees are awarded pursuant to the Court's "inherent authority" in situations in which an "abuse of the judicial process" or "interference with the administration of justice" has been committed. (Appellant's brief at 7.)  As such, appellant's argument relying on the American Rule lacks merit.

{¶ 41} Appellant next argues that appellee is not a prevailing party, as required in order to be awarded attorney fees, because the action was voluntarily dismissed. A prevailing party does not exist when a claim is voluntarily dismissed. *See Sturm v. Sturm* 63 Ohio St.3d 671 (1992).

{¶ 42} There is no requirement that a party be a prevailing party for the court to award attorney fees as a sanction for abuse of process or interference with the administration of justice. Appellant has not cited any authority for his proposition. Instead, he relies upon *Sturm*, where sanctions were sought under the frivolous conduct statute, R.C. 2323.51. The present case is more akin to another case appellant cites, *Miami Valley Hosp. v. Payson*, 2d Dist. No. 18736 (Dec. 7, 2001), where the court affirmed a trial court's award of sanctions following voluntary dismissal of the complaint pursuant to Civ.R. 41 (A)(1), and the court specifically rejected a prevailing party requirement because there was no such requirement in the statute that formed the basis for the attorney fee claim. Here, there is no requirement for the exercise of the court's inherent power that the defendant be a prevailing party. Similarly, in *Slabinski v. Servisteel Holding Co.*, 33 Ohio App.3d 345 (9th Dist.1986), the court affirmed an award of attorney fees as a sanction under the court's inherent power to do those things necessary for the preservation of judicial powers and processes.  The injured party was not a prevailing party, as the underlying action had been voluntarily dismissed.  Appellant's prevailing party argument lacks merit.

{¶ 43} Appellant argues that the trial court erred in allocating 80 percent of the attorney fees award against appellant, when the record contains no evidence which supports the trial judge's conclusion that appellant directed Hammond's conduct.

{¶ 44} The trial court found that appellant was the driving force behind the filing and prosecution of this litigation, and was deliberately abusing the judicial process. As such, the trial court allocated 80 percent to appellant. Appellant cites no authority for his claim that a trial court cannot, in its discretion, apportion sanctions on a percentage basis between two wrongdoers, based on the court's determination of the extent of wrongdoing by each of the guilty parties. The trial court has this power, as part and parcel of its broad inherent power to deal with abuse of judicial process and interference with the administration of justice.

{¶ 45} A trial judge is best able to view the witnesses and observe their demeanor, gestures, voice inflections, and use their observations in weighing the credibility of the proffered testimony. Review of a trial court's factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings. Our review of the record does not show that the trial court abused its discretion in the allocation of the attorney fees and expenses.

{¶ 46} Based on the evidence presented at the sanctions hearing, the trial court found that appellant clearly abused the judicial process and thwarted the administration of justice. Our review shows that the record contains competent, credible evidence to support the trial court's findings and judgment entry.  Appellant's assignment of error is overruled.

## IV. DISPOSITION

{¶ 47} Having overruled appellant's assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.

———————————————