[Cite as *Guo v. Meade Motorcars, L.L.C.*, 2026-Ohio-1930.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Xingkui Guo

    Appellant

v.

 Meade Motorcars, LLC

    Appellee

Court of Appeals No. {72}S-25-035

Trial Court No. 24 CJ 1313

**DECISION AND JUDGMENT**

Decided: May 26, 2026

\* \* \* \* \*

Xingkui Guo, pro se, appellant.

\* \* \* \* \*

**SULEK, J.**

{¶ 1} Appellant Xingkui Guo appeals two judgments of the Sandusky County Court of Common Pleas. The first denied his motion to set aside an earlier judgment of the trial court, which vacated the foreign judgment entered against appellee Meade Motorcars, LLC ("Meade"). The second denied Guo's motion to vacate sanctions that were entered against him. For the reasons that follow, the trial court's judgments are affirmed.

## I. Factual Background and Procedural History

{¶ 2} The genesis of this matter is an online car purchase executed by Guo, a Tennessee resident, as the buyer, and Meade, an Ohio company, as the seller. Meade

listed a 1999 Lexus LX 470 for sale on www.carsforsale.com. On July 7, 2023, Guo expressed interest in the vehicle. An agreement was entered into on July 10, 2023, for Guo to purchase the vehicle for $8,980.00, which included a $700.00 transportation fee.

{¶ 3} After delivery of the vehicle, a conflict arose regarding the condition of the vehicle and Meade's offer of a video inspection prior to the loading of the vehicle onto the truck for transport. Text messages show that on July 14, 2023, Meade informed Guo that his check was received, and when it cleared Meade would ship the vehicle through the transport company. Meade specified, "Before we put it of (sic) the truck we will FaceTime the vehicle with you so there is (sic) no surprises." Several hours later, Meade explained, "We FaceTime in case transportation company damages. Just protects you." Guo responded the next morning, "No need." In later text messages, Guo disputes that he ever sent the message "No need." Confusing the matter is that it appears Meade sent another message on July 17, 2023, which seemed to be a copy of the first message sent on July 14, 2023, and which again stated that Meade would contact Guo via FaceTime before it put the vehicle on the delivery truck. Guo maintains that no FaceTime video occurred.

{¶ 4} Upon receiving the vehicle, Guo believed that it was in significantly worse condition than advertised. When the parties were unable to resolve their dispute over the vehicle, Guo sued Meade in Tennessee state court. Meade did not appear, and Guo was awarded a default judgment in the amount of $9,851.00.

2.

{¶ 5} On September 3, 2024, Guo, at all times appearing pro se, filed to enforce the Tennessee judgment in the Sandusky County Court of Common Pleas. On October 15, 2024, the trial court ordered Meade's bank account to be garnished. The bank submitted the garnished funds in the amount of $10,391.28 to the trial court on February 18, 2025. The next day, Meade entered an appearance and moved to vacate the October 15, 2024 judgment and to dismiss the foreign judgment. Meade argued that the foreign judgment was not valid because Tennessee did not have personal jurisdiction over it under the Tennessee "long-arm" statute. Guo opposed the motion to vacate, arguing that the sale and transport of the vehicle into Tennessee constituted sufficient minimum contacts to subject Meade to Tennessee's jurisdiction.

{¶ 6} The trial court set the matter for a hearing on April 29, 2025. Guo moved to be allowed to appear remotely, as he had done throughout the case to that point. He stated that he was a college professor and the hearing date conflicted with the college's final examination period. The trial court granted Guo's motion to appear remotely. The April 29, 2025 hearing, however, did not occur due to a technical failure in the court's system. The trial court reset the matter for a hearing on May 27, 2025.

{¶ 7} On May 5, 2025, Guo moved to continue the May 27, 2025 hearing, explaining that the trial court set the date without confirming his availability, and he would be unavailable due to international travel beginning May 20, 2025. The trial court granted the motion to continue and rescheduled the hearing for June 25, 2025. On May 8, 2025, Guo again moved the trial court to reschedule the hearing date, explaining that

3.

he would not return from his international travel to China until June 24, 2025, and it would be impossible for him to attend the June 25, 2025 hearing. The trial court granted Guo's second motion and rescheduled the hearing for June 27, 2025.

{¶ 8} On June 16, 2025, Guo moved to appear at the hearing remotely. Guo stated that due to an unforeseen serious health issue affecting his mother, he was forced to remain in China to care for her and could not attend the June 27, 2025 hearing in person. The trial court denied this motion.

{¶ 9} Meade then moved to continue the hearing due to its principal, Brad Meade, having a previously scheduled vacation. Guo did not consent to the continuance and filed an objection to it. The trial court granted Meade's request for a continuance and rescheduled the matter for July 8, 2025.

{¶ 10} On June 26, 2025, Guo filed a "Notice to Court of Plaintiff's Unavailability for In-Person Hearing and Request for Ruling Based on Submitted Filings." Guo asserted that he was outside the United States attending to urgent family matters and therefore was unable to appear in person for the July 8, 2025 hearing. He requested that "the Court proceed to consider and rule on the pending motions and responses based solely on the pleadings and evidence already filed by all parties. All necessary arguments and relevant legal authorities have been submitted to the Court for consideration."

{¶ 11} On July 8, 2025, the trial court held the hearing on Meade's motion to vacate and to dismiss the foreign judgment. Meade was present with its counsel. Guo

4.

was not present. At the hearing, Meade offered the testimony of its principal, Brad Meade ("Brad").

{¶ 12} Brad explained that the transaction with Guo was done entirely by phone after Guo expressed interest in the vehicle. Meade disclosed to Guo that the suspension would need to be repaired at a cost of $8,000 to $15,000, and the vehicle was priced accordingly. Photos of the undercarriage were provided to Guo. According to Brad, Meade additionally did a FaceTime video call with Guo where one of its employees showed everything around the vehicle and even drove it on the freeway. Meade offered a second FaceTime video, but it was declined. He testified that Meade discouraged Guo from buying the vehicle sight unseen, but Guo dismissed the advice and mailed a check to Meade's office in Fremont, Ohio. Brad stated that Guo had the vehicle transported through Becker Transport, which was a company that he recommended. Guo received the vehicle, but he refused to sign the Dealer Application for Title, so Meade has been unable to transfer the title to him. Brad stated that Meade has made several attempts to get Guo to sign, but none have been successful.

{¶ 13} In addition to describing the transaction with Guo, Brad testified generally that Meade "pretty much only [does] business in the State of Ohio." Brad specified that Meade does not advertise in the state of Tennessee, has not sold any other cars in the state of Tennessee, has not conducted any other business in the state of Tennessee, is not incorporated in the state of Tennessee, does not receive mail in the state of Tennessee, and does not require any services from the state of Tennessee.

5.

{¶ 14} Following the hearing, the trial court took the matter under advisement.

{¶ 15} Prior to the July 8, 2025 hearing, Meade had filed a request for sanctions against Guo, stating that in his June 26, 2025 filing, Guo cited "*Davis v. Davis*, 590 N.E.2d 1372 (Ohio Ct. App. 1990)," for the proposition that any challenge to the validity of a foreign judgment must be directed to the originating jurisdiction, which in this case would be the courts in Tennessee. Meade asserted, however, that the citation was incorrect, and despite soliciting the help of the law librarian, it could not find the case. Meade also provided three other cases cited by Guo that contained incorrect citations and could not be found. Meade postulated that the cases were "wholly fictitious."

{¶ 16} On July 10, 2025, Guo opposed Meade's request for sanctions. He stated in his motion that *Davis v. Davis*—as well as the three other cases referred to by Meade—was available at the provided citation and was "readily accessible to any attorney who exercises due diligence. It is evident that Defendant's counsel did not make a genuine effort to research these authorities and instead chose to file a frivolous Request for Sanctions without proper investigation."

{¶ 17} Guo further filed his own motion for sanctions against Meade's counsel for "engaging in conduct designed to mislead this Court and to improperly delay enforcement of a valid foreign judgment."

{¶ 18} On July 15, 2025, the trial court entered its judgment granting Meade's motion to vacate the foreign judgment. It found that Meade "did not have sufficient minimum contacts with the State of Tennessee to satisfy the Tennessee long arm statute."

6.

The trial court ordered that the garnished money be returned to Meade and dismissed the matter, noting that the request for sanctions remained pending.

{¶ 19} Thereafter, on July 21, 2025, Guo moved pursuant to Civ.R. 60(B) to set aside the trial court's July 15, 2025 judgment. He claimed that the evidence provided by Meade was false. He further argued that challenges to the jurisdiction of a foreign judgment must be raised in the originating jurisdiction. In support, he cited "*Moran v. Moran*, 2012-Ohio-1841, ¶ 13 (10th Dist. Ct. App.)," a case which this court could not locate. The trial court denied Guo's motion on July 22, 2025.

{¶ 20} The trial court held a hearing on the motions for sanctions on August 4, 2025. That transcript was not requested and is not part of the record on appeal. Guo requested to appear remotely, but his request was denied. Following the hearing, on August 11, 2025, the trial court summarily denied Guo's motion for sanctions and granted Meade's motion for sanctions, finding that "Plaintiff has more than awkwardly mis-cited law in support of his arguments, he has simply made them up. There is no pattern or consistency, akin to misidentifying the source or manner in creating the citation." The trial court awarded Meade $100 in sanctions.

{¶ 21} Next, on August 22, 2025, Guo filed another Civ.R. 60(B) "Motion to Set Aside Order Granting Defendant's Motion to Dismiss the Foreign Judgment." In this motion, he sought relief pursuant to Civ.R. 60(B)(3) for the "fraud, misrepresentation, or misconduct" by Meade in soliciting "multiple, material false statements under oath during the [July 8, 2025] motion hearing." He detailed 11 instances where he asserted

7.

that Brad testified falsely. In addition to his Civ.R. 60(B)(3) claim, Guo further argued that the trial court violated his due process rights and deprived him of a meaningful opportunity to be heard when it denied his request to participate in the hearing remotely.

{¶ 22} Concurrent with his motion to set aside, Guo also filed motions for sanctions against Brad and against Meade's counsel. He believed that sanctions were warranted because Brad provided false testimony and Meade's counsel solicited the false testimony.

{¶ 23} The trial court summarily denied Guo's Civ.R. 60(B) motion and his motions for sanctions in a judgment entry journalized on September 3, 2025.

{¶ 24} Finally, on September 5, 2025, Guo filed a Civ.R. 60(B) motion to vacate the August 11, 2025 judgment that awarded $100 in sanctions to Meade. He argued that he did not willfully disregard the trial court's authority and explained that while he was in China he faced substantial restrictions in accessing legal research resources because tools such as Google are banned there. He maintained that his mis-citations did not constitute sanctionable conduct.

{¶ 25} The trial court summarily denied Guo's motion to vacate the sanctions in a judgment entry journalized on September 11, 2025.

## II. Assignments of Error

{¶ 26} Guo timely appeals the September 3 and 11, 2025 judgments of the trial court, asserting four assignments of error for review:

> 1. The trial court erred by dismissing the duly entered Tennessee judgment without providing Appellant a meaningful opportunity to be

8.

heard, thereby violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

2. The trial court erred by re-examining the Tennessee court's valid exercise of jurisdiction and by refusing to grant full faith and credit to a judgment entered consistently with T.C.A. § 20-2-214 and International Shoe Co. v. Washington, 326 U.S. 310 (1945).

3. The trial court abused its discretion by declining to impose sanctions under Civ.R. 11 and R.C. 2323.51 where Appellee's witness and counsel knowingly presented false testimony and misrepresentations to the court.

4. The trial court erred in failing to recognize that Appellant's citation error was inadvertent and does not warrant sanctions under Civ.R. 11 or R.C. 2323.51.

## III. Analysis

{¶ 27} At the outset, it is important to recognize that Guo has appealed only the trial court's September 3 and 11, 2025 judgments, which denied his Civ.R. 60(B) motions for relief. He did not appeal the trial court's July 15, 2025 judgment that granted Meade's motion to dismiss the foreign judgment. He also did not appeal the trial court's August 11, 2025 judgment that imposed sanctions against him.

{¶ 28} "The scope of an appeal is determined by the designation contained within the notice of appeal, filed pursuant to App.R. 3(A)." *Dickman v. Johnson*, 2025-Ohio-4349, ¶ 10 (6th Dist.); *see also* App.R. 3(D) ("The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.") The trial court's July 15

9.

and August 11, 2025 judgments are therefore not before this court. *Dickman* at ¶ 9-10; *LVNV Funding, LLC v. Smith*, 2026-Ohio-1404, ¶ 28 (6th Dist.).

{¶ 29} As such—with the exception of Guo's third assignment of error, which pertains to the trial court's September 3, 2025 judgment denying his motion for sanctions against Meade's counsel and principal—this court will analyze his arguments within the framework of the trial court's denial of his Civ.R. 60(B) motions for relief from judgment. *See Hendricks v. Ventra Sandusky, LLC*, 2025-Ohio-1288, ¶ 7 (6th Dist.) ("It is well-recognized that a Civ.R. 60(B) motion may not be used as a substitute for appeal.")

{¶ 30} As set forth in *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus,

> "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

"These requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton*, 70 Ohio St.3d 172, 174 (1994).

{¶ 31} "An appellate court reviews a trial court's denial of a Civ.R. 60(B) motion for an abuse of discretion." *Moore v. ThorWorks Industries, Inc.*, 2024-Ohio-1617, ¶ 91 (6th Dist.), citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988); *State ex*

10.

*rel. Hatfield v. Miller*, 2023-Ohio-429, ¶ 8. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**A. The trial court did not abuse its discretion in denying Guo's motion to set aside the July 15, 2025 judgment because he did not establish grounds for relief under Civ.R. 60(B)(1)-(5).**

{¶ 32} Guo's first and second assignments of error pertain to the trial court's September 3, 2025 denial of his motion to set aside the July 15, 2025 judgment that vacated the foreign judgment.

{¶ 33} Guo's second assignment of error argues that the trial court erred in finding that Tennessee lacked personal jurisdiction over Meade. The trial court vacated the foreign judgment because it found that Meade did not have sufficient minimum contacts to satisfy the Tennessee long-arm statute.

{¶ 34} R.C. 2329.022 provides that "[a] foreign judgment filed pursuant to this section has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas and may be enforced or satisfied in the same manner as a judgment of a court of common pleas." A foreign judgment is entitled to "full faith and credit in this state." R.C. 2329.021. It is subject to collateral attack, however, "if there was no subject-matter or personal jurisdiction to render the judgment under the law of the foreign state." *Roe v. Taylor*, 2024-Ohio-2714, ¶ 16 (8th Dist.), quoting *Roe v. Boland*, 2021-Ohio-4017, ¶ 7 (8th Dist.), citing *Litsinger Sign Co. v. Am. Sign Co.*, 11 Ohio St.2d 1 (1967), paragraph

11.

one of the syllabus ("A judgment of a sister state's court is subject to collateral attack in Ohio if there was no subject matter or personal jurisdiction to render the judgment under the sister state's internal law, and under that law the judgment is void . . ..").

{¶ 35} On appeal, Guo maintains that Meade's electronic and telephonic communications with Guo, its acceptance of payment from a Tennessee bank account, and its delivery of the vehicle to Tennessee, constitute the minimum contacts necessary to establish personal jurisdiction consistent with the extents of due process as recognized in Tennessee's long-arm statute. Further, Guo argues that Meade committed tortious acts causing injury within Tennessee by "falsifying the bill of sale," "misrepresenting a promised FaceTime inspection," "concealing severe undercarriage corrosion," and "withholding the vehicle title," all of which also serve to establish personal jurisdiction in Tennessee.

{¶ 36} Here, Guo's arguments concerning personal jurisdiction go to the meritorious defense prong of the *GTE Automatic* test. This court need not decide whether the facts and circumstances of this case establish Tennessee's jurisdiction over Meade under Tennessee law, however, because Guo has failed to satisfy the second prong of the *GTE Automatic* test in that he has not demonstrated grounds for relief under Civ.R. 60(B)(1)-(5).

{¶ 37} In his first assignment of error, Guo argues that the trial court deprived him of the due process of law when it did not allow him to appear remotely at the July 8, 2025 hearing, thereby denying him a meaningful opportunity to be heard. This is not a

12.

meritorious defense to the trial court's underlying decision to vacate the foreign judgment for lack of personal jurisdiction. Instead, it is a ground for relief from that judgment. While Guo does not identify under which of the Civ.R. 60(B) grounds for relief his argument would fall, the only applicable one is Civ.R. 60(B)(5), which is a catch-all provision denominating "any other reason justifying relief from the judgment." Civ.R. 60(B)(5) is intended to reflect "the inherent power of a court to relieve a person from the unjust operation of a judgment." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 66 (1983). "[T]he grounds for invoking said provision should be substantial." *Id.*

{¶ 38} "The right to procedural due process is found in the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *Youngstown v. Traylor*, 2009-Ohio-4184, ¶ 8. "Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right." *Id,*, quoting *State v. Cowan*, 2004-Ohio-4777, ¶ 8. Notably, "[i]t is well-settled that '[t]he due process rights to notice and [a] hearing prior to a civil judgment are subject to waiver.'" *Irving J. Franklin Realty, Inc. v. East Cleveland*, 2023-Ohio-4419, ¶ 7 (8th Dist.), quoting *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185 (1972).

{¶ 39} Here, Guo waived his due process right to be present at the hearing, whether in person or remotely. The trial court, after granting several requests for continuance from Guo and one from Meade, set the matter for a hearing on Meade's

motion to dismiss the foreign judgment on July 8, 2025. Unlike for previously scheduled hearings, Guo did not file a motion to appear remotely. Nor did he file a request for a continuance based on his unavailability. Instead, Guo filed a "Notice to Court of Plaintiff's Unavailability for In-Person Hearing and Request for Ruling Based on Submitted Filings." In his notice, Guo specifically requested that the trial court "proceed to consider and rule on the pending motions and response based solely on the pleadings and evidence already filed by all parties. All necessary arguments and relevant legal authorities have been submitted to the Court for consideration." Guo, therefore, waived his right to be heard at the July 8, 2025 hearing, and his absence at that hearing, whether in person or remotely, does not constitute a ground for relief under Civ.R. 60(B)(5).

{¶ 40} Guo does not make any further argument on appeal regarding any of the Civ.R. 60(B)(1)-(5) grounds for relief. It should be noted that in his August 22, 2025 Civ.R. 60(B) "Motion to Set Aside Order Granting Defendant's Motion to Dismiss the Foreign Judgment," Guo relied upon Civ.R. 60(B)(3), which provides grounds for relief based upon "[f]raud . . ., misrepresentation or other misconduct of an adverse party." He asserted that "[Meade's] witness knowingly provided multiple, material false statements under oath during the motion hearing, constituting perjury and materially affecting the Court's decision." Guo, however, does not raise a similar argument on appeal in his first or second assignments of error, nor does he address how the trial court abused its discretion in not finding grounds for relief under Civ.R. 60(B)(3). He does mention, in his third assignment of error, that Brad's false testimony materially prejudiced him, but

he does so in the context of arguing that the trial court erred when it did not award him sanctions, not in the context of establishing grounds for relief under Civ.R. 60(B)(1)-(5). He thus presents no direct argument on appeal relative to Civ.R. 60(B)(3), and "[i]t is not the role of this court to 'search the record or formulate legal arguments on behalf of the parties.'" *State ex rel. McKenney v. Jones*, 2022-Ohio-583, ¶ 28, quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 19; *see also State v. Clark*, 2025-Ohio-4410, ¶ 23 ("[I]t is not the role of an appellate court to cobble together an argument for an appellant."). Furthermore, as will be discussed below relative to his third assignment of error, Guo has not established that Meade committed a fraud, misrepresentation, or other misconduct.

{¶ 41} Accordingly, because Guo has not demonstrated grounds justifying relief from the July 15, 2025 judgment under Civ.R. 60(B)(1)-(5), the trial court did not abuse its discretion when it denied his motion to set aside. Guo's first and second assignments of error are not well-taken.

### B. The trial court did not abuse its discretion in denying Guo's motion for sanctions where he did not demonstrate false or fraudulent testimony.

{¶ 42} In his third assignment of error, Guo argues that the trial court abused its discretion when it denied his motion for sanctions against Meade's counsel and principal. This court reviews a trial court's ruling on a request for sanctions under R.C. 2323.51 and Civ.R. 11 for an abuse of discretion. *Smith v. Anderson*, 2023-Ohio-108, ¶ 11 (6th Dist.), citing *State ex rel. Davis v. Metzger*, 2016-Ohio-1026, ¶ 10; *Gallagher v. AMVETS Post 17*, 2009-Ohio-6348, ¶ 32 (6th Dist.).

{¶ 43} In his appellate brief, Guo references the 11 purported falsehoods he identified in his August 22, 2025 Civ.R. 60(B) motion to set aside the judgment vacating the foreign judgment. He maintains that the contradictions between Brad's testimony and the documentary exhibits are not a product of confusion but of deliberate falsification. Each of those 11 instances, however, can be explained as either not contradictory, the result of colloquialism, or a difference of perspective or memory.

{¶ 44} First, Brad testified that the transaction was conducted "all by phone." Guo disputes this characterization, noting that there were over 60 emails as well as other written correspondence. Upon review, when read as a whole, Brad's testimony was meant to highlight that the original transaction was discussed and agreed to over the phone and through phone messages, not in person. Guo takes Brad's statement literally, when it is not meant as such. There is no contradiction.

{¶ 45} Second, Brad testified that "We even did a FaceTime for him." Guo maintains that a FaceTime video never occurred before shipment. This highlights a central dispute between the parties. Brad testified that two FaceTime videos were contemplated. One which showed the condition of the vehicle and included a Meade employee driving the car on the highway. Brad testified that this FaceTime occurred. The second FaceTime video was to occur before the vehicle was loaded onto the truck for shipment. The parties agree that this video did not occur. Brad testified that it did not occur because Guo said there was "No need." Guo disputes ever saying that. The photographs of the text messages show that the same message informing Guo that his

16.

check was received and offering a FaceTime video before shipment was sent on July 14 and July 17. On July 15, Guo replied "No need." Brad's testimony is not a falsehood, it is a difference in perspective regarding which message was the salient one.

{¶ 46} Third, Brad testified that the transaction occurred in Fremont, Ohio. Guo argues that the transaction was not limited to Fremont, Ohio, but constituted interstate commerce. Again, this is a difference of perspective. For Brad, Meade was located in Fremont, Ohio, all of his communications occurred there, the agreement was drafted and executed there, the check was deposited there, and the paperwork transferring title was prepared and shipped from there. Neither Brad nor the vehicle left Fremont, Ohio for this transaction until the vehicle was shipped following completion of the purchase.

{¶ 47} Fourth, Brad testified that Guo "had [the vehicle] transported through a company I referred -- Becker Transport." Guo states that this is false and that the transportation was part of the contractual agreement and was expressly promised by Meade. He, however, has not provided evidence that Brad solely arranged for transportation and that Guo was uninvolved in selecting and coordinating with the transportation company. There is no contradiction with the record evidence.

{¶ 48} Fifth, Brad testified that he advised Guo that the vehicle was being sold "as is." Guo asserts that he first learned it was being sold "as is" when he received the "Buyer's Guide" when the vehicle was delivered. He states there is no evidence that he was advised before delivery the vehicle would be sold "as is." Notably, there is also no evidence that Guo was not advised the vehicle was being sold "as is." Further, there is no

17.

evidence that the vehicle was being sold with a warranty. There is no contradiction with the record evidence.

{¶ 49} Sixth, Brad testified that it was Guo who initially contacted Meade. Guo claims this is false, and that Meade initiated the contact when it listed the vehicle for sale on www.carsforsale.com. Generically listing the vehicle for sale online, however, did not initiate contact with Guo. Instead, Guo acknowledged that he made first contact when he stated, "*After Plaintiff submitted an inquiry via Carsforsale.com*, [Brad] initiated and pursued communications with Plaintiff . . .." Guo initiated contact when he submitted an inquiry. Brad's testimony is not false.

{¶ 50} Seventh, Brad testified that he informed Guo that the vehicle needed repairs to the suspension that were estimated to cost between $8,000 to $15,000. Guo maintains that he was never so informed. There is no documentary evidence in the record to prove or disprove that such a disclosure was made. To the extent that the fact was relevant, it was left to the trier of fact to determine based on the credibility of the witness. Brad's testimony is a difference of memory and is not demonstrably false.

{¶ 51} Eighth, Brad testified that Meade conducted one FaceTime video with Guo and offered a second. Guo claims that this is "entirely false." He states there was no evidence to support that a FaceTime inspection occurred, and he again refers to the dispute regarding whether there was "no need" for the second FaceTime video. Notably, the record contains no evidence that the first FaceTime video did not occur. Brad's testimony is a difference of memory and is not demonstrably false.

18.

{¶ 52} Ninth, Guo cites the following exchange that took place regarding Guo's dispute over the condition of the vehicle:

THE COURT:  But it's not -- it's not a, it don't run . . .

THE WITNESS:  No, nothing --

THE COURT:  -- the -- the --

THE WITNESS:  -- no, no, no, no, no, no.

THE COURT:  -- it's the corrosion of the undercarriage --

THE WITNESS:  Yeah --

THE COURT:  -- and -- okay.

THE WITNESS:  -- correct.

Guo interprets that Brad testified the vehicle was not operational, which would be false. To the contrary, the import of the testimony was that the problem with the vehicle was the corrosion of the undercarriage and not that it was inoperable.  There is no falsehood or contradiction in Brad's testimony.

{¶ 53} Tenth, Brad testified that Meade helped Guo contact Becker Transport. Guo states he has no knowledge of the company "Becker Transport," and that Brad explicitly told him that he would arrange for a transport company to ship the vehicle from Ohio to Tennessee.  Guo offers that without that assurance, he would not have purchased the vehicle.  This again presents a difference of memory.  There is no evidence in the record proving or disproving who contacted the transport company.  Brad's testimony is not demonstrably false.

19.

{¶ 54} Eleventh, and finally, Brad testified that he did not forge Guo's name on the bill of sale, and that "[i]t actually said, phone, 'cause he gave us permission by phone to purchase the vehicle, which we obviously, had a text." Guo claims this is false and misleading and that he never gave Meade permission to sign any contractual document on his behalf. Notably, Guo does not identify any document that contains a forged signature. Furthermore, the parties clearly had entered into an agreement for the vehicle as evidenced by their communications and Guo's conduct in delivering a check to Meade for the purchase price. Brad's testimony is not demonstrably false.

{¶ 55} In sum, none of the 11 instances are deliberate falsehoods or contradictions that would constitute sanctionable conduct under R.C. 2323.51 or Civ.R. 11. Accordingly, the trial court did not abuse its discretion when it denied Guo's motion for sanctions.

{¶ 56} Guo's third assignment of error is not well-taken.

**C. The trial court did not abuse its discretion in denying Guo's motion to set aside the sanctions against him where he cited and relied upon five different AI-hallucinated cases.**

{¶ 57} Finally, in his fourth assignment of error, Guo argues that the trial court abused its discretion when it sanctioned him for including mis-citations in his filings to the court. Again, Guo appeals the trial court's denial of his Civ.R. 60(B) motion to set aside, not the underlying judgment imposing the sanctions. In any event, the trial court did not abuse its discretion in denying Guo's motion to set aside because he does not have a meritorious defense to the imposition of sanctions.

20.

**{¶ 58}** Guo asserts that sanctions were not warranted under Civ.R. 11 or R.C. 2323.51 because his conduct was not willful or objectively frivolous. He contends that the mis-citations were merely the result of his use of the Chinese platform "Deepseek" and his limited access to Ohio-specific legal research tools. He further claims that "[o]nce the issue was identified, [he] promptly acknowledged and corrected the error."

**{¶ 59}** In addition to Civ.R. 11 and R.C. 2323.51, "[c]ourts possess inherent authority to sanction a party . . . where that party's conduct thwarts the administration of justice, disobeys court orders, abuses the judicial process, or when it is otherwise necessary for the administration of justice and protection of judicial powers and processes." *DiCuccio v. Lindsmith*, 2018-Ohio-2320, ¶ 30 (10th Dist.), citing *Telecom, Ltd. v. Wisehart & Wisehart, Inc.*, 2012-Ohio-4376, ¶ 15 (10th Dist.).

**{¶ 60}** Relevant here, Guo cited five different cases. The first four were in his July 10, 2025 opposition to Meade's motion for sanctions: "*Davis v. Davis*, 590 N.E.2d 1372 (Ohio Ct. App. 1990);" "*Kaplan v. Tuennerman*, 87 Ohio App.3d 43, 621 N.E.2d 717 (8th Dist.1993);" "*Black v. Black*, 175 Ohio App.3d 113, 2008-Ohio-1525 (8th Dist.);" and "*Brunswick Hills Twp. v. Bank of New York*, 2007-Ohio-1480 [(12th Dist.)]." The fifth was in his July 21, 2025 motion to set aside: "*Moran v. Moran*, 2012-Ohio-1841, ¶ 13 (10th Dist. Ct. App.)". He cited each of those for the proposition that Ohio courts cannot inquire into the validity of a foreign judgment and any challenges to jurisdiction must be made in the rendering court. He further provided alleged quotations from all the cases except for *Davis*. The cases, however, do not exist at those citations.

Some of them do not exist at all. And where the others do exist, they do not include the quotations provided by Guo, nor do they stand for the propositions for which they were cited. In all respects, they appear to be the result of AI-generated hallucinations. Furthermore, contrary to his claim on appeal, when Guo was confronted with these mis-citations, his response was to affirm that the citations existed and to chastise Meade's attorney for not performing "due diligence" or making "a genuine effort to research these authorities."

{¶ 61} Ohio courts have imposed sanctions under their inherent authority where parties have submitted "hallucinated" case citations such as those submitted by Guo. *See Gamble v. Gamble*, 2025-Ohio-2381, ¶ 27 (12th Dist.); *see also State v. Coleman*, 2026-Ohio-965 (11th Dist.) (imposing sanctions for using AI hallucinated transcript quotations). It is no defense that Guo is a pro se litigant with limited availability to Ohio-specific legal resources as "[i]t is well established that *pro se* litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel." *State ex rel. Neil v. French*, 2018-Ohio-2692, ¶ 10, quoting *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10. Guo had an obligation to verify that the cases and law he was presenting to the court were real and not a fabrication. Guo, therefore, has not demonstrated a meritorious defense to the claim that he should be sanctioned for providing hallucinated citations to the trial court.

22.

**{¶ 62}** Accordingly, the trial court did not abuse its discretion when it denied his motion to set aside the judgment imposing those sanctions. Guo's fourth assignment of error is not well-taken.

## IV. Conclusion

**{¶ 63}** For the foregoing reasons, the judgments of the Sandusky County Court of Common Pleas are affirmed. Guo is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Christine E. Mayle, J.                                 _____

                                                        JUDGE

Gene A. Zmuda, J. _____

Charles E. Sulek, J. _____                        _____

CONCUR.                                                   JUDGE

                                                        _____

                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.